GEORGE SEGAL, Appellant, *v.* CHEMICAL IMPORTING AND MANU-
FACTURING COMPANY, Respondent.

First Department, April 6, 1923.

Contracts — action to recover balance due on purchase price of sugar —
contract of sale made by plaintiff when it did not have license required
by Lever Act, § 5, and proclamation of President made thereunder is
not enforcible — Lever Act (Food Control Act of 1917), § 5, not
unconstitutional.

A contract for the sale of sugar made after the date fixed in a proclamation by the
President, pursuant to section 5 of the Lever Act, also known as the Food Con-
trol Act of 1917, which section is constitutional, requiring those engaged in the
sale of sugar to secure a license, is illegal and the seller cannot recover the pur-
chase price from the buyer, where the seller did not have a license to deal in
sugar at the time the contract was made.

APPEAL by the plaintiff, George Segal, from a determination of
the Appellate Term of the Supreme Court, First Department,
entered in the office of the clerk of the county of New York on
the 29th day of June, 1922, affirming a judgment of the Municipal
Court of the City of New York, Borough of Manhattan, Fifth
District, in favor of the defendant.

*Joseph G. Abramson* [*Henry Waldman* of counsel], for the
appellant.

*Benjamin F. Kraft* [*Albert W. Venino* of counsel; *Alexander
Miller* with him on the brief], for the respondent.

MERRELL, J.:

The action was to recover the sum of $802.97, balance due plain-
tiff for sugar sold and delivered to the defendant. The plaintiff
sold a large quantity of sugar, aggregating in value at the agreed
price $29,232.97, upon which the defendant paid the plaintiff
the sum of $28,430, leaving a balance unpaid, to recover which
this action was brought. In its answer the defendant alleged
that at the time of the sale of said sugar the United States was
at war; that the transaction between the parties was regulated
by the acts of Congress and by the regulations of the United States
Food Administration; and that the plaintiff had neglected and failed
to secure a proper license required by said acts of Congress and rules
of the Food Administration, and was unauthorized to deal in
sugar, which fact was unknown to the defendant at the time of
purchasing the same of plaintiff. At the trial the facts were
stipulated, and it was agreed in writing that on March 15, 1920,
the plaintiff agreed to sell and deliver to the defendant 224,869

pounds of white crystal sugar at thirteen cents per pound, amounting in the aggregate to $29,232.97. The sugar contracted for was delivered to and accepted by the defendant, and thereafter the defendant paid the plaintiff upon the purchase price thereof the sum of $28,430, leaving a balance of $802.97 unpaid. It was further stipulated that on the 15th day of March, 1920, when said contract was made, the plaintiff did not have a license from the United States Food Administration authorizing it to deal in sugar. On such stipulated facts both sides moved for judgment, and the case was submitted to the justice presiding at the Municipal Court on said stipulation, and said justice rendered a decision in favor of the defendant, dismissing the complaint, the Municipal Court basing its decision on the authority of *Chemical Importing & Mfg. Co.* v. *DeSherbinin*, theretofore recently decided, and directed judgment accordingly. In the *Chemical Importing & Mfg. Co.* v. *DeSherbinin* case this defendant was the plaintiff. An appeal was taken by the plaintiff from the judgment in *Chemical Importing & Mfg. Co.* v. *DeSherbinin* to this court, but said appeal has never been brought on for argument, although the appeal papers were filed with the clerk of this court. The respondent here states in its brief that the reason why said appeal was not prosecuted in this court was that this respondent, after taking said appeal, became convinced that the order of the Special Term could not be reversed. In that action the question came up upon demurrer to the defense contained in the answer of the defendant DeSherbinin. Mr. Justice LEHMAN, in deciding that case, wrote an opinion, in which he stated:

" The third defense, somewhat inartistically but sufficiently, alleges that the plaintiff had not procured a license from the Food Administration to deal in sugar as a broker. It seems to me that this defense is also sufficient. I think it is also quite clear that when Congress enacted legislation requiring brokers dealing in sugar to secure licenses, they desired to prevent unauthorized persons whose credentials had not been passed upon by the government, to do any business, and the very act of doing business without such a license was, therefore, wrongful and contrary to the public policy as established by the statute. If, therefore, the plaintiff failed to comply with the statute it should not be permitted to recover for services rendered as broker without a license."

In the case at bar the defense which the Municipal Court held good arose under the provisions of section 5 of the Lever Act (so called), passed by Congress August 10, 1917, which is also known as the Food Control Act of 1917. The Lever Act contained twenty-seven sections. (40 U. S. Stat. at Large, 276, chap. 53.) By section 5 it is provided:

" That, from time to time, whenever the President shall find it essential to license the importation, manufacture, storage, mining, or distribution of any necessaries, in order to carry into effect any of the purposes of this Act, and shall publicly so announce, no person shall, after a date fixed in the announcement, engage in or carry on any such business specified in the announcement, * * * unless he shall secure and hold a license issued pursuant to this section. * * *. Any person who, without a license issued pursuant to this section, or whose license shall have been revoked, knowingly engages in or carries on any business for which a license is required under this section * * * shall, upon conviction thereof, be punished by a fine not exceeding $5,000, or by imprisonment for not more than two years, or both." (40 U. S. Stat. at Large, 277, § 5.)

Thereafter, pursuant to the provisions of said section, the President issued the proclamation on October 8, 1917, that

" All persons, firms, corporations and associations engaged in the business either of * * * (3) importing, manufacturing (including milling, mixing or packing), or distributing (including buying and selling) any of the following commodities: * * * Sugar,. syrups or molasses, * * * are hereby required to secure on or before November 1, 1917, a license, which license will be issued under such rules and regulations governing the conduct of the business as may be prescribed. Application for license must be made to the United States Food Administration, Washington, D. C., Law Department — License Division, on forms prepared by it for that purpose, which may be secured on request." (40 U. S. Stat. at Large, 1700 *et seq.*)

Section 5 of the Lever Act and the proclamation thereunder were in full force and effect at the time of the making of the contract between the parties hereto. (See Lever Act [40 U. S. Stat. at Large, 283], § 24, and Sugar Equalization Board Act, 41 id. 386, chap. 33. See, also, 41 id. 1359, chap. 136, being Termination of World War Construction Resolution, and 42 id. 105, chap. 40, being Termination of World War Resolution.) The respondent contends that the plaintiff, not having procured the required license, entered into said contract in violation of the provisions of said Lever Act. The appellant contends, however, that section 5 was enacted for the purpose of providing a penalty for a violation of the preceding section 4 of the Lever Act (40 U. S. Stat. at Large, 277), and asserts that section 4 has been held by the United States Supreme Court to be unconstitutional, and that, therefore, section 5, while not specifically held to be unconstitutional, falls with section 4. The appellant cites two cases ( *United States* v. *Cohen Grocery Co.*, 255 U. S. 81, and

*Weeds, Inc.,* v. *United States,* Id. 109) in support of his position. It is true that the decisions mentioned do hold certain clauses of section 4 to be unconstitutional, neither of which, however, relates in the slightest degree to the clause of section 5 requiring the taking out of a government license. As a matter of fact, section 4 as a whole has not been declared unconstitutional, and there is no force in the appellant's position that section 5 was enacted for the purpose of providing a penalty for a violation of either clause of section 4. By act of Congress, passed October 22, 1919, and known as the Food Control Act of 1919 (41 U. S. Stat. at Large, 297, chap. 80, tit. 1; Id. 298, § 2), section 4 was amended by adding thereto the following: " Any person violating any of the provisions of this section upon conviction thereof shall be fined not exceeding $5000 or be imprisoned for not more than two years, or both  *  *  *.'' Therefore, section 4, not only as to its various clauses, but as to the penalty for the violation of any of its clauses, was complete in itself, and section 5, concerning the taking of licenses, was also complete in itself, providing a penalty for a violation thereof.

In *United States* v. *Cohen Grocery Co.* (*supra*) the defendant moved to quash the indictment which was based upon a violation of that clause of section 4 which made it unlawful " to make any unjust or unreasonable rate or charge in handling or dealing in or with any necessaries.'' The United States Supreme Court granted the motion to quash, and in that case construed the clause in question as forbidding and penalizing the exaction of an excessive price upon the sale of a commodity; and since the section set up no ascertainable standard of guilt, it was repugnant to the Fifth and Sixth Amendments to the United States Constitution, requiring due process of law and that persons accused of crime should be adequately informed of the nature and cause of the accusation. The court held that the mere existence of a state of war did not suspend these guaranties of the amendments, or relieve Congress from their limitations.

In the case of *Weeds, Inc.,* v. *United States* (*supra*) the indictment charged a violation of clause (e) of section 4, making it unlawful " to conspire, combine, agree, or arrange with any other person,  *  *  *  (e) to exact excessive prices for any necessaries.'' In that case the plaintiffs in error were convicted of conspiracy to exact excessive prices for wearing apparel and, in furtherance of the conspiracy, of putting on sale in the store various articles of clothing at prices varying from 110 to 194 per cent in advance of cost; and also of making sales of various suits of clothes at unreasonable prices. The United States Supreme Court reversed the judgment of conviction in that case, and remanded the judgment, with direction to set aside the sentence and quash the indictment,

holding section 4 to be unconstitutional because of its uncertainty, not only in the clause penalizing sales of necessaries at "unjust or unreasonable rates or charges" (*United States* v. *Cohen Grocery Co.*, 255 U. S. 81), but also in the clause penalizing conspiracies to exact "excessive prices." The court held that the charge as to conspiracy to exact excessive prices was wanting in standard and vague for the reasons as stated by the court in the *Cohen* case.

In these cases there was only involved the question of prices. In *Standard Chemicals & Metals Corporation* v. *Waugh Chemical Corporation* (231 N. Y. 51) the Court of Appeals followed the said decisions of the United States Supreme Court, upon the ground that the clause of section 4 of the Lever Act, making it unlawful to engage in any discriminatory and unfair or any deceptive or wasteful practice or device or to make any unjust or unreasonable rate or charge in handling or dealing in or with any necessaries, was so indefinite as to be unintelligible, and was not a prohibition by which conduct could be governed, and was, therefore, unenforcible. The Lever Act itself as a whole has never been successfully attacked. Section 4 of said act made it unlawful "willfully to destroy any necessaries for the purpose of enhancing the price or restricting the supply thereof;" also made it unlawful "to monopolize or attempt to monopolize, either locally or generally, any necessaries." Certainly these and many other provisions of the act are in nowise affected by the decisions of the United States Supreme Court holding certain clauses with reference to undue profits unconstitutional because of indefiniteness and lack of standard. The appellant's contention, therefore, that section 4 has been held unconstitutional, is inaccurate. As before stated, there are twenty-seven sections of the Lever Act. The act was passed as a war measure for the purpose of establishing and maintaining governmental control over necessaries during the war. By sections 10 and 12 of the Lever Act (40 U. S. Stat. at Large, 279) provision is made for requisitioning supplies, and it is a matter of common knowledge that whole factories were taken in charge by the government as a war measure. That such action was important and necessary no one can doubt. By section 25 of the act (40 U. S. Stat. at Large, 284) provision is made for fixation of prices of coal and coke, and the government requirement as to licensing dealers in those commodities has never been questioned. (See Pres. Proc. March 15, 1918, 40 U. S. Stat. at Large, 1757.)

Section 5 of the act, it seems to me, is entirely independent of section 4, and the mere fact that certain clauses of section 4 were held unconstitutional can have no effect upon the provisions of section 5. Moreover, by section 22 of the act (40 U. S. Stat.

at Large, 283) it is provided as follows: "That if any clause, sentence, paragraph, or part of this Act shall for any reason be adjudged by any court of competent jurisdiction to be invalid, such judgment shall not affect, impair, or invalidate the remainder thereof, but shall be confined in its operation to the clause, sentence, paragraph, or part thereof, directly involved in the controversy in which such judgment shall have been rendered."

The law is well settled that a contract made in violation of a penal statute is unenforcible. (*Sirkin* v. *Fourteenth Street Store*, 124 App. Div. 384; *Morgan Munitions Co.* v. *Studebaker Corp.*, 226 N. Y. 94.)

A recovery may not be had for work done in violation of law. (*Johnston* v. *Dahlgren*, 166 N. Y. 354; *Schnaier & Co.* v. *Grigsby*, 132 App. Div. 854; affd., 199 N. Y. 577; *Bronold* v. *Engler*, 194 id. 323.)

It is suggested that appellant's violation of law in dealing in sugar without first having obtained a government license was not *malum in se*, but was, at most, *malum prohibitum*, and, therefore, did not preclude a recovery of the balance of the purchase price of the sugar dealt in by plaintiff contrary to law. It seems to me, on the contrary, that plaintiff's conduct was more than a mere violation of a statute, and that the crime committed was not one of lesser importance. The Lever Act was passed at a time when in all quarters every effort was being strained to win the World War in which this country had become involved. It was deemed necessary by the Congress and by governmental authority to conserve our food resources and control and regulate the manufacture and sale of the necessities of life. To that end it was duly enacted and provided that, until peace with Germany should be proclaimed, those engaged in buying and selling certain necessaries, including sugar, were required to procure a proper government license. The appellant was charged with knowledge of the provisions of the act, and as the same had been in full force and effect for over two years prior to the sale of the sugar in suit, he must have appreciated that he was committing a serious violation of a law enacted for the preservation of his country. Instead of cheerfully conforming to the requirements of the statute, he chose to ignore the same. Under such circumstances his offense was something greater than a mere statutory crime as generally understood, and approached being criminal *per se.*

But even assuming that the contract upon which appellant seeks to recover was merely illegal because of the provisions of the statute, public policy stands in the way of the court's lending

itself to enforce such contract when in violation of law. In *Continental Wall Paper Co.* v. *Voight & Sons Co.* (212 U. S. 227) the United States Supreme Court sustained a defense in an action for the purchase price of wall paper, on the ground that the plaintiff and others had illegally combined to monopolize and restrain trade, and that the contract sued upon grew out of such illegal combination. Mr. Justice Harlan, writing the opinion of the court, said (at p. 262):

" The plaintiff comes into court admitting that it is an illegal combination whose operations restrain and monopolize commerce and trade among the States and asks a judgment that will give effect, as far as it goes, to agreements that constituted that combination, and by means of which the combination proposes to accomplish forbidden ends. We hold that such a judgment cannot be granted without departing from the statutory rule, long established in the jurisprudence of both this country and England, that a court will not lend its aid, in any way, to a party seeking to realize the fruits of an agreement that appears to be tainted with illegality, although the result of applying that rule may sometimes be to shield one who has got something for which as between man and man he ought, perhaps, to pay, but for which he is unwilling to pay.

" In such cases the aid of the court is denied, not for the benefit of the defendant, but because public policy demands that it should be denied without regard to the interests of individual parties. It is of no consequence that the present defendant company had knowledge of the alleged illegal combination and its plans or was directly or indirectly a party thereto. Its interest must be put out of view altogether when it is sought to have the assistance of the court in accomplishing ends forbidden by the law."

In *Hanauer* v. *Doane* (12 Wall. 342) the United States Supreme Court denied the plaintiff the right of recovery of the purchase price of goods sold in aid of the Rebellion or with a knowledge that they were purchased for the Confederate States government. The decision of the court in that case was based upon the ground that public policy required avoiding contracts for illegality and immorality. Mr. Justice Bradley, in that connection, said: " The whole doctrine of avoiding contracts for illegality and immorality is founded on public policy. It is certainly contrary to public policy to give the aid of the courts to a vendor who knew that his goods were purchased, or to a lender who knew that his money was borrowed, for the purpose of being employed in the commission of a criminal act, injurious to society or to any of its members."

In *Morgan Munitions Co.* v. *Studebaker Corporation* (226 N. Y.

94) the Court of Appeals upheld the defense of illegality in an action to recover commissions on a sale of supplies. The defense pleaded was that the contract of employment was procured contrary to the provisions of section 939 of the Penal Law, which forbade a person obtaining employment through any false statement in writing as to his name, residence, previous employment or qualification, and declared a person thus obtaining employment to be guilty of a misdemeanor. Judge CRANE, in writing for the unanimous Court of Appeals, states (at p. 99): " As held by the Appellate Division in this case a contract procured by the commission of a crime is unenforceable even if executed (citing *Sirkin* v. *Fourteenth Street Store,* 124 App. Div. 384). The illegality does not consist in the approach to the contract as stated in *Cody* v. *Dempsey* (86 App. Div. 335), as Morgan could not establish his case upon the contract without proving its illegal nature. No person can maintain an action to which he must trace his title through his own breach of the law. (*Hall* v. *Corcoran,* 107 Mass. 251, 260.) "

In *McMullen* v. *Hoffman* (174 U. S. 639, 654, 669) Mr. Justice PECKHAM, writing for the court, said: " The authorities from the earliest time to the present unanimously hold that no court will lend its assistance in any way towards carrying out the terms of an illegal contract. * * * The court refuses to enforce such a contract and it permits defendant to set up its illegality, not out of any regard for the defendant who sets it up, but only on account of the public interest. It has been often stated in similar cases that the defense is a very dishonest one, and it lies ill in the mouth of the defendant to allege it, and it is only allowed for public considerations and in order the better to secure the public against dishonest transactions. To refuse to grant either party to an illegal contract judicial aid for the enforcement of his alleged rights under it tends strongly towards reducing the number of such transactions to a minimum. The more plainly parties understand that when they enter into contracts of this nature they place themselves outside the protection of the law, so far as that protection consists in aiding them to enforce such contracts, the less inclined will they be to enter into them. In that way the public secures the benefit of a rigid adherence to the law."

I think the judgment of the Municipal Court was right, and the same was properly affirmed by the Appellate Term. The determination of the Appellate Term should be affirmed, with costs.

DOWLING, SMITH, PAGE and FINCH, JJ., concur.

Determination affirmed, with costs.