Christophersen & Kiaer, Inc., Plaintiff, *v.* United States Navigation Company, Inc., Defendant.

Municipal Court of the City of New York, Borough of Manhattan, First District, December, 1923.

Ships and shipping — contracts — action to recover loading agency commissions — when non-compliance with revenue statute does not render contract unenforcible — Internal Revenue Act of 1919 (40 U. S. Stat. at Large, 1127) — defense that plaintiff had not paid tax prescribed untenable — ship brokers.

Unless a statute purely for revenue prohibits and makes unlawful contracts or sales, non-compliance with the statute does not make the contract unenforcible.
The Internal Revenue Act of 1919 (40 U. S. Stat. at Large, 1127) is strictly a revenue act, and as thereunder no license to engage in the business of ship broker is required, the legality of such business is not conditioned upon the payment of the tax prescribed by section 1001(3) of said statute.
In an action upon an agreement by defendant to pay plaintiff a share of loading agency commissions received by defendant on ships secured by plaintiff, it is no defense that plaintiff had not paid the federal tax upon ship brokers prescribed by the Internal Revenue Act of 1919, and upon proof that plaintiff had earned its commission, it is entitled to judgment therefor.

Action for commissions.

*Dennie K. Keller* (*Joseph A. Fagnant,* of counsel), for plaintiff.

*Clarence Kimball* (*Robert M. Simpson,* of counsel), for defendant.

SPIEGELBERG, J.   This is an action upon an agreement of the defendant to pay the plaintiff a share of loading agency commissions received by the defendant on ships secured by the plaintiff.

That the plaintiff earned its commission cannot be and is not seriously denied.   The defendant, however, attacks the plaintiff's right to institute this action for its failure to pay the federal tax assessed on ship brokers.   Section 1001 of the Internal Revenue Act of 1919 (40 U. S. Stat. at Large, 1127) provides: " That on and after January 1, 1919 there shall be levied, collected, and paid annually the following special taxes   *   *   *

" 3. Ship brokers shall pay $50.   Every person whose business it is as a broker to negotiate freights and other business for the owners of vessels, or for the shippers or consignors or consignees of freight carried by vessels, shall be regarded as a ship broker."

Section 1005 of the act reads: " That any person who carries on any business or occupation for which a special tax is imposed by Sections 1000, 1001 or 1002, without having paid the special tax therein provided, shall, besides being liable for the payment of such special tax, be subject to a penalty of not more than $1,000 or to imprisonment for not more than one year, or both."

No other penalty is provided against a delinquent taxpayer, nor is there any prohibition against carrying on the business of a ship broker on failure to pay the tax.   The plaintiff concedes that it did not pay the tax, but maintains that the transaction in question does not fall within subdivision 3 of section 1001, for the reason that the defendant was not an owner of a vessel, nor a shipper or consignor or consignee of freight carried by vessels, but conducted the business of forwarder, viz., of assembling freight for the carrier.

It is not necessary to decide whether the plaintiff is correct in its contention for the reason that I am of the opinion that in any event this action is maintainable.   It is elementary that no right of action can arise from an illegal contract.   This rule applies to contracts *malum in se* as well as to those that are prohibited by statute.   But if a statute points out the consequences of its violation, and all penalties or forfeitures other than those set forth in the statute are excluded, none other will be enforced, and in such a case an action may be maintained if it can be without sanctioning the illegality.   *Pratt* v. *Short,* 79 N. Y. 437, 445.

Whether the imposition of a penalty renders a contract which is in conflict with the provisions of a statute illegal, must be tested by the purposes of the statute.   A distinction has frequently been drawn between statutes designed for raising of revenue and those designed for the protection of the public.   Unless a statute purely for revenue prohibits and makes unlawful contracts or sales, non-

**780** CHRISTOPHERSEN & KIAER, INC., *v.* U. S. NAV. CO., INC.

Municipal Court of New York, December, 1923.        [Vol. 121]

compliance with the statute does not make the contract unenforcible. 6 R. C. L. 704.

In *Goldsmith* v. *Manufacturers' Liability Insurance Company*, 103 Atl. Rep. 627, the Court of Appeals of Maryland says: " It is settled that, where the contract which the plaintiff seeks to enforce is expressly, or by implication, forbidden by the statute, no court will lend its assistance to give it effect. *Cope* v. *Rowlands*, 2 M. & W. 149. By the great weight of authority a contract entered into by an unlicensed person, engaged in a trade, business, or profession required to be licensed, and made in the course of such trade, business or profession, cannot be enforced by such person, if it appears that the license required by the statute is, in whole or in part, for the protection of the public, and to prevent improper persons from engaging in such trade, business or profession. If, however, the purpose of the statute is to raise revenue only, his right to enforce such contract is not defeated by the want of a license."

That the imposition of a tax in this case was purely for revenue only cannot be denied. The law is strictly a revenue act. It does not intend to regulate any business. No license is required to engage in the business of ship broker. The Revenue Act of 1919 is entirely different in its requirements from those laws which make certain avocations dependent upon the obtaining of a license. Such laws are intended for the protection of the people to safeguard the public health or to prevent improper persons from engaging in business to the detriment of the community. Instances of that kind are numerous. Licenses are generally required for such diversified occupations as lawyers, physicians, plumbers, real estate brokers, shipping masters, pharmacists and automobile drivers. Some of these regulatory statutes require the payment of a tax or a license fee; but the imposition of a tax in such cases is incidental only and not the main purpose.

In *Lloyd* v. *Johnson*, 45 App. D. C. 322, an act of Congress was under review which made appropriations for the District of Columbia. Taxes were imposed upon some fifty occupations; among others, on real estate brokers. Although the statute said unless the tax be paid " that no person shall engage in or carry on any business * * * for which a license tax is imposed," the court held (at p. 331): " The act places no inhibition on the real estate business in this District. The prohibition goes to the agent, and not to the business * * * Both the prohibition and penalty are directed to the person and not to the business transacted."

At page 330 the court says: " The real distinction is to be drawn from the purpose of the statute and the nature of the business

affected or regulated.   Clearly the purpose of the statute here is to raise revenue, and not to regulate the business of real estate brokerage.   That this was the real purpose of the statute is emphasized by reference to numerous other persons engaged in various other occupations who are taxed in the act through the imposition of a license.   Nor is there any question of public policy, morals or general welfare here involved.   This being a revenue statute, it is to be strictly construed, and its operation should not be extended by implication.   It is neither remedial nor founded upon any principle of public policy."

To the same effect: *Sunflower Lumber Co.* v. *Turner Supply Co.,* 158 Ala. 191; *Walker* v. *Baldwin,* 103 Md. 352; *Mandlebaum* v. *Gregovich,* 17 Nev. 87; *Wood* v. *Krepps,* 168 Cal. 382.

The only case which I was able to find dealing with this question under the recent federal revenue acts is *Simmons* v. *Oatman,* 110 Kans. 44.   The court there held that under the revenue act of 1914, which imposed a tax of twenty dollars on commercial brokers, and provided similar penalties as in the act of 1919, the plaintiff, although he had not paid the federal tax as commercial broker, could enforce his claim for compensation.

A number of cases are to be found under the federal revenue laws passed during the Civil War.   They generally hold that these laws were merely for the purpose of raising revenue, and do not invalidate the contract itself.   See *Larned* v. *Andrews,* 106 Mass. 435; *Aiken* v. *Blaisdell,* 41 Vt. 655; *Rahter* v. *First National Bank of Lancaster,* 92 Penn. St. 393; *Ruckman* v. *Bergholz,* 37 N. J. L. 437.

In the case last cited the court held that plaintiff's failure to take out a license under the federal revenue act did not affect his right to recover.   At page 440 the court says:

" The question in such cases is, whether the statute is intended as a protection or merely as a fiscal expedient; whether the legislature intended to prohibit the act unless done by a qualified person, or merely that every person who did it should pay a license fee. If the latter, the act is not illegal.   *Cope* v. *Rowlands,* 2 M. & W. 149; *Smith* v. *Mawhood,* 14 M. & W. 452; *Taylor* v. *Crowland Gas & Coke Co.,* 10 Exch. 293.

" The internal revenue law prescribed no qualification for a real estate agent.   Anyone who should have taken out the requisite license would have been authorized *ipso facto,* so far as that law was concerned, to carry on the business without respect to his qualifications.   It did not undertake to declare any act done by an unlicensed person acting as a real estate agent, invalid.   Its sole object in requiring a license in such case was to raise revenue."

**782** Christophersen & Kiaer, Inc., v. U. S. Nav. Co., Inc.

Municipal Court of New York, December, 1923.　　　　[Vol. 121

The same situation applies to this case. In fact, as heretofore pointed out, no license is required under the act of 1919 to carry on the business of ship broker. It exacts merely the payment of a tax. No other qualifications are prescribed. The legality of the business is not conditioned upon the payment of the tax.

The New York cases dealing with this subject were likewise decided under the Civil War revenue acts. They are *Woodward* v. *Stearns,* 10 Abb. Pr. (N. S.) 395; *Hall* v. *Bishop,* 3 Daly, 109, and *Best* v. *Bauder,* 29 How. Pr. 489.

In *Woodward* v. *Stearns, supra,* decided in the Court of Common Pleas, there is found at the end of the case the following short statement: " So far as the point that the plaintiff had no federal license to act as broker is concerned, that fact does not affect his right to recover upon an express contract for fixed compensation."

In *Hall* v. *Bishop, supra,* the plaintiff, who was a lawyer, had not obtained a license as required by the revenue act of 1864. That statute required the obtaining of a license for certain professions, among others, for that of lawyer, and provided that no business for which a license had to be obtained should be carried on without such license, and made the violation thereof a penal offense. The court held that where a statute enacts as one of the means of raising revenue that those engaged in a particular occupation shall take out a license and pay a certain sum, the only consequence upon omission is a liability to the penalty prescribed in the statute; but where the object of requiring a license is to limit the pursuit of certain callings to those who are duly qualified, then the penalty implies a prohibition against engaging in that pursuit unless a license is procured.

In *Best* v. *Bauder, supra,* the court held that the statute contained a direct prohibition against selling as a pedler without a license. Section 57 of the revenue act of March 3, 1863, provided that no person shall be engaged in the occupations mentioned in the statute without a license. It may be observed that this ruling is at variance with the one in *Lloyd* v. *Johnson, supra;* but it does not affect the case under consideration as the revenue act of 1919 contains no inhibition against carrying on the business of ship broker.

In the *Bauder* case the court refers to *Griffith* v. *Wells,* 3 Den. 226, which was an action to recover for liquor sold without a license. The court held that the Excise Law, although it did not in terms prohibit the sale of spirituous liquors without a license, had in view the protection of the public health and the prevention of fraud and, therefore, a contract in violation of the statute could not be enforced. The court, however, says: " When a license to carry on a particular trade is required for the sole purpose of raising revenue,

and the statute only inflicts a penalty by way of securing payment of the license money, it may be that a sale without a license would be valid."

The defendant cites and relies on the case of *Segal* v. *Chemical Importing & Manufacturing Co.*, 205 App. Div. 220. This was an action brought for the unpaid balance of sugar sold by plaintiff without having obtained a license to deal in sugar as prescribed by section 5 of the Food Control Act of 1917 (40 U. S. Stat. at Large, 276, chap. 53), commonly known as the Lever Act, and the proclamation of the president of October, 1917, issued in pursuance of the statute. The act provided that whenever the president deemed the regulation of necessaries essential, no person shall carry on any business specified in the announcement unless he shall have procured a license under the statute. The court held that the plaintiff could not recover as he carried on business in violation of law and that the statute was passed as a war measure to husband the resources of the country and protect the people against excessive prices for necessaries. The court says (at p. 225): " It is suggested that appellant's violation of law in dealing in sugar without first having obtained a government license was not *malum in se*, but was, at the most, *malum prohibitum*, and, therefore, did not preclude a recovery of the balance of the purchase price of the sugar dealt in by the plaintiff contrary to law. It seems to me, on the contrary, that plaintiff's conduct was more than a mere violation of a statute, and that the crime committed was not one of lesser importance. The Lever Act was passed at a time when in all quarters every effort was being strained to win the World War in which this country had become involved. It was deemed necessary by the Congress and by governmental authority to conserve our food resources and control and regulate the manufacture and sale of the necessities of life. To that end it was duly enacted and provided that, until peace with Germany should be proclaimed, those engaged in buying and selling certain necessaries, including sugar, were required to procure a proper government license."

No parallel can be drawn between a violation of the Lever Act and the failure to pay the tax imposed by a statute for revenue only.

The plaintiff is entitled to receive its commission, viz., the sum of $807.50.

Judgment accordingly.