DOBLER BREWING COMPANY, INC., Plaintiff, *v.* JAMES E. FEENEY, Defendant.

City Court of Albany, April 17, 1936.

*Woollard & Morris* [*Ernest B. Morris* of counsel], for the plaintiff.

*Sol Rubenstein,* for the defendant.

DESTEFANO, J. Plaintiff corporation, a brewing company, seeks to recover a balance due for goods sold and delivered to defendant, a retailer, both of whom are licensed and authorized to do business under the provisions of the Alcoholic Beverage Control Law (Laws of 1934, chap. 478) and acts amendatory thereto.

The plaintiff contends that from December 16, 1933, to May 31, 1935, defendant purchased from it beer at the agreed price and reasonable value of $8,794, and that it received only $8,053.25 in payment therefor, leaving a balance of $740.75.

The defendant, on the other hand, avers that on or about February 11, 1935, plaintiff loaned to him the sum of $470 for the purpose and intent of using same to procure a liquor and wine license, and, in addition thereto, to pay the premium on the

bond required for such license. Defendant further alleges that said loan is illegal and void and was made in violation of subdivision (b) of section 101 of the Alcoholic Beverage Control Law, and, therefore, cannot be recovered in this action.

Section 101 of the Alcoholic Beverage Control Law provides as follows:

" § 101. Manufacturers and wholesalers not to be interested in retail places.

" 1. It shall be unlawful for a manufacturer or wholesaler licensed under this chapter to

" (a) Be interested directly or indirectly in any premises where any alcoholic beverage is sold at retail; or in any business devoted wholly or partially to the sale of any alcoholic beverage at retail by stock ownership, interlocking directors, mortgage or lien or any personal or real property, or by any other means.

" (b) Make, or cause to be made, any loan to any person engaged in the manufacture or sale of any alcoholic beverage at wholesale or retail.

" (c) Make any gift or render any service of any kind whatsoever, directly or indirectly, to any person licensed under this chapter which in the judgment of the liquor authority may tend to influence such licensee to purchase the product of such manufacturer or wholesaler."

Similar provisions of the same law also apply to the licensee. Section 106, subdivision 14, declares it unlawful for a retailer to " make or cause to be made *any loan* to any person engaged in the manufacture or sale of liquors, wines or beers at wholesale or retail," and section 100, subdivision 5, provides: " No retail licensee shall sell, deliver or give away, or cause, permit or procure to be sold, delivered or given away, any alcoholic beverage *on credit*," etc.

Any violation by any person of the above provisions is a misdemeanor. (§ 130, subd. 3.) Section 36 of the Insurance Law contains like provisions.

It is thus apparent that if a retailer had made a loan to a manufacturer or had sold or given away any alcoholic beverage *on credit*, he would be deprived of his legal remedy to recover in a lawsuit.

We come now to the question of whether the plaintiff made a loan to the defendant, as alleged in the affirmative defense.

The evidence discloses that the parties had been doing business from about December 16, 1933, mostly on a cash basis, when defendant would make payments to plaintiff's agent and collector. Thereafter, and up to the early part of January, 1935, defendant was allowed credit of more than $300. It was at this time that defendant requested a loan of plaintiff through McHenry, officer

of plaintiff corporation, in order to secure a liquor and wine permit, having been sent to him by O'Neill, collector and agent of plaintiff. It appears that no loan was actually made to defendant at that time, but beer was delivered to him from about January 14, 1935, to February 4, 1935, no payments being made thereon except thirty dollars on January 16, 1935, leaving a balance due on the company's books of $825.25 on February 4, 1935. It is undisputed, however, that defendant did pay to O'Neill, the plaintiff's collector, $470 on account of the beer delivered to him. This amount was never turned over to the company by O'Neill and does not show on its books. Thereafter, and on or about February 11, 1935, O'Neill gave to defendant the said sum of $470 with which a liquor and wine license was to be subsequently procured. It also appears that early in January, 1935, during his conversation with McHenry when defendant was indebted to plaintiff in the sum of $363.25 he was to be allowed further credit for about a month. It was then that O'Neill collected from defendant the amount of $470 due plaintiff and later turned over to him.

This amount actually left defendant's possession and was paid to plaintiff's agent who could have applied it to defendant's account. It was then in possession of and belonged to plaintiff. But instead it was then given to defendant, no record made of it on plaintiff's books, and his indebtedness rose on same from January 14, 1935, to February 2, 1935, from $363.25 to $805.75.

It is thus readily seen that plaintiff was interested in the business of defendant and loaned to him the sum of $470. By a loan of money is meant the delivery by one party to, and the receipt by the other party of a given sum of money, upon an agreement, express or implied, to repay the sum loaned, with or without interest. A loan is usually made at the request and for the benefit of the borrower. (*Matter of Nellis*, 126 Misc. 638.) It was a scheme or transaction which violated the spirit of the Alcoholic Beverage Control Law and should not be sanctioned by the courts. (Opinions of Attorney-General [1933], 158.) The Legislature in enacting this law intended to correct the abuses which existed prior to the prohibition era. The clear mandate of the law is that it shall be unlawful for a manufacturer to make a loan, gift, be interested in, or render any service of any kind whatsoever *directly* or *indirectly* to a retailer or his business.

Similar provisions are also contained in other statutes. Section 65 of the Insurance Law declares that no insurance corporation, officer, agent, solicitor or representative shall directly or indirectly pay or allow to the insured named in the policy, as an inducement to such insurance, any rebate from the premium which is specified in the policy; nor shall the insured, his agent or representative

directly or indirectly accept or knowingly receive any such rebate from the premiums specified in the policy. A person violating the above provision is deemed to be guilty of a misdemeanor.

In construing this section the Appellate Division in *Sturm* v. *Truby* (245 App. Div. 357, 359) held that " A contract made in violation of a criminal or prohibitory statute is an unlawful undertaking, and is void and unenforcible, even though one of the parties has enjoyed the benefits of the agreement. The court will not allow itself to become the means of enforcing such an agreement, but will leave the contracting parties where it finds them." (See, also, *Darling* v. *Darling*, 241 App. Div. 57, 59; affd., 265 N. Y. 650.)

In *Adler* v. *Zimmerman* (233 N. Y. 431, 438) the Court of Appeals said: " No cause of action can arise out of a transaction made illegal by statute. Where a statute prohibits altogether the sale of certain goods not only the agreement for such a sale is invalid but if the sale is made in violation of law the agreed price cannot be recovered." (*Tench* v. *Lawson*, 225 App. Div. 198.)

Also in *Reiner* v. *North American Newspaper Alliance* (259 N. Y. 250, 259) the court said:

" A court will not lend aid to a party who has committed a tort to enable him to recover from another the price agreed to be paid for his wrongful act. The defense is allowed not as a protection to a defendant, but as a disability to the plaintiff."

" No person can maintain an action to which he must trace his title through his own breach of the law." (*Morgan Munitions Co.* v. *Studebaker Corp.*, 226 N. Y. 94, 99; *Hall* v. *Corcoran*, 107 Mass. 251, 260.)

" It is certainly contrary to public policy to give the aid of the courts to a vendor who knew that his goods were purchased, or to a lender who knew that his money was borrowed, for the purpose of being employed in the commission of a criminal act." (*Segal* v. *Chemical Importing & Mfg. Co.*, 205 App. Div. 220, 226; *Hanauer* v. *Doane*, 12 Wall. 342; *McMullen* v. *Hoffman*, 174 U. S. 639, 654, 669.)

It is immaterial whether the thing forbidden is *malum in se* or merely *malum prohibitum*, and while the Alcoholic Beverage Control Law does not in so many words declare that such a contract shall have no legal force or effect, it is void nevertheless, although not expressly declared so by the Legislature. (*Sturm* v. *Truby, supra.*)

The conclusion is, therefore, reached that plaintiff cannot recover the sum of $470, unlawfully loaned to defendant, which amount, deducted from the sum of $740.75 claimed by plaintiff, leaves $270.75, for which judgment is granted to the plaintiff. The counterclaim of defendant is dismissed.