Birdie Amsterdam, J.
Plaintiff sues for damages for breach of an oral contract. Defendant disputes plaintiff’s version of that contract; claims an oral contract differing in terms and in time of making and asserts thereon a counterclaim for commissions; contends that if, in fact, the contract as alleged by *1047 plaintiff was made, (1) plaintiff, as inducement, promised to pay and did pay a sum of money to defendant’s employee, without defendant’s knowledge and consent, in violation of section 439 of the Penal Law; and (2) that it was beyond the scope, actual and apparent, of its employee’s authority, hence not binding on defendant. Plaintiff admits giving a sum of money to defendant’s employee but claims it was paid as an advance commission to defendant.
The following facts are undisputed: Plaintiff was engaged in the business of growing and distributing plants and nursery stock. Defendant, a domestic corporation, was a commission merchant, representing nurserymen as sales agent, selling to the retail trade. In the latter part of March, 1960, one Harry Wheeler called at plaintiff’s nursery and introduced himself as a sales agent employed by defendant. Wheeler expressed an interest in one of plaintiff’s novelty-type holly plants, adorned with artificial berries, set in a four-inch square white plastic pot, and covered by a polyethylene bag. Told that the plant was a Christmas item and that plaintiff desired to sell such plants for the coming Christmas season, Wheeler stated that his company (defendant-corporation) sold to large chain and retail stores, and inquired whether it could act as plaintiff’s broker. Plaintiff informed him that the plants were being grown in Texas by a certain nursery company' — that the latter had offered to sell them to plaintiff — that before plaintiff could purchase them, 10,000 plants would have to be presold because the freight from Texas to New York would be otherwise prohibitive — that plaintiff would have to supply the grower with the plastic pots, berries and bags — that the plants would have to be presold by the first week in June to afford the grower adequate time to get them well established and rooted. Wheeler offered, for convenience, to order the berries and bags, since defendant’s place of business was located in the wholesale flower market where such berries were available and such polyethylene bags had been handled by defendant’s president, Abraham Black, who, on request, would order them for plaintiff and have them forwarded directly to the grower in Texas. Undisputed, too, is the fact that Wheeler was an employee of defendant.
Plaintiff testified that on March 29, 1960, defendant, through Wheeler, entered into an oral contract with plaintiff, defendant agreeing, as broker, to sell 10,000 holly plants for plaintiff for Christmas-time delivery, on a 10% commission basis, the selling-price to be $1 per plant or $1.10 if delivered to buyer’s place of business; that plaintiff was not to purchase the 10,000 plants for resale unless defendant advised him that it had procured firm *1048 orders for the resale of 10,000 plants; that in April or May, plaintiff telephoned Wheeler, at which time Black, defendant’s president, identified himself and said the plant looked like a nice item; that during the latter part of May or early June, Wheeler told plaintiff that the entire 10,000 plants were sold by defendant, and he gave plaintiff the names of the customers and the amounts sold to each; that plaintiff thereupon closed his contract of purchase with the grower, bought 10,000 plastic pots, which were shipped to the grower; that in the latter part of November, defendant ordered 10,000 polyethylene bags to be shipped to Texas (the bill therefor, which was paid by plaintiff, is invoiced to plaintiff and the name “ A. Black ” appears thereon under the printed words “ Your order # ”); that Wheeler bought the berries, for which he was paid by plaintiff.
Plaintiff further testified that on a week end, to wit, on November 29,1960, Wheeler told him that he (Wheeler) had no money — that Black, his boss, was out of town. He asked plaintiff to advance him $200 on commissions and said he would take it up and straighten it out with Black; that plaintiff made out a check for $200 to the order of Wheeler, typed on the reverse side thereof the following indorsement: 1 ‘ Advance commissions on the sale of 10,000 holly plants ”, and gave the check to Wheeler (this check is in evidence, having been offered by defendant); that on December 9, when the plants were ready to be shipped from Texas, plaintiff telephoned Food Fair, one of the ‘ ‘ customers ’ ’ that Wheeler had told him had purchased 2,500 of the plants, to advise it that delivery was about to be made; that Food Fair denied ever having ordered the plants. Other ‘ ‘ represented customers” either denied ordering the plants or the quantity they were represented to have ordered. It was then discovered that only approximately 3,500 and not 10,000 had been sold. Efforts were made to sell the remainder, but were unfruitful except for the sale by plaintiff of a few hundred at 85^ each. On January 16, 1961, plaintiff wrote defendant that he was holding defendant accountable for 6,000 unsold plants. Plaintiff also testified that the unsold plants had to be stored at a rental of $40 per month and he incurred expenses for labor and their care at a cost of $200 a month for a period of five months; that in the latter party of May, plaintiff sold 5,000 at 60^ each and an indefinite amount perished.
The Texas grower testified that in July, 1960, he met Wheeler at a convention and Wheeler told him that 10,000 hollies had been sold.
Black, defendant’s president, testified that defendant represented growers and sold for a commission; that Wheeler was *1049 employed by defendant at a weekly drawing account of $125 to charged against sales account; that Wheeler’s duties were to solicit nurserymen who produced the commodity and represent them as sales agent by selling to supermarkets, chain stores and retailers, many of which were defendant’s clients; that it was possible in June that Wheeler told him that defendant was going to sell holly for plaintiff; no amount was mentioned; that he knew that Wheeler, as an accommodation to plaintiff, bought berries and was purchasing bags to complete the orders. Thereafter, he said it was in March or April, 1960, that he knew that defendant entered into an arrangement with plaintiff whereby defendant was going to represent plaintiff as a selling agent at 10% commission to sell what plaintiff had to sell; that Wheeler had authority to enter into an agreement to solicit the plaintiff’s account. He testified, further, that defendant sold 3,500 or 4,000 holly plants for plaintiff and was entitled to “ estimated ” commissions of $340.
Wheeler testified that he did not agree that he would sell 10,000, but that defendant would try to sell 10,000, or as many of them as he could; that defendant was to get 10% commission after the plants were delivered and paid for; that he knew from whom the plaintiff was purchasing the plants and that they were to be shipped up here in time for delivery for Christmas; that at the start, plaintiff told Mm that there would be some extra effort of his (Wheeler’s) part to sell the hollies so there loould be something in it for Mm (Wheeler) too. He denied having told the Texas grower that 10,000 were sold. He further testified that on November 29, 1960, he told plaintiff he was short of money and would like to have a couple of hundred dollars; that plaintiff gave him a check for $200 with no indorsement on the reverse side thereof.
Called by defendant, a representative of the bank on which the check in question was drawn, in response to a subpoena duces tecum served upon it, produced a photocopy from a microfilm record thereof made by the bank on November 29, 1960, at the time the check was cashed (this, too, is in evidence). It bears no typewritten indorsement.
After carefully appraising the evidence and in light of all of the surrounding circumstances presented, I am persuaded and. brought to the conclusion that the contract asserted by plaintiff, and not that alleged by defendant, was the agreement that was entered into by the parties herein; that the “quantity” of plants that defendant maintains that it sold and for which it seeks, by its counterclaim, to recover $340 for “estimated” commissions was, in fact, the approximate 3,500 plants that *1050 plaintiff testified were sold by defendant instead of the 10,000 it had agreed to sell.
Nor does defendant’s contention that Wheeler lacked authority to enter into the contract carry conviction or force. Defendant corporation was in the business of selling nursery stock to chain stores and retailers on a commission basis, and enjoyed a good reputation. A corporation necessarily must act through some person or persons. Concededly, Wheeler was employed to solicit business for defendant and in its counterclaim it admits he was authorized to sell holly plants for plaintiff.
It is my considered opinion, under the circumstances in the instant case, that the conclusion is compelling that Wheeler was acting within the scope of his employment, that he had the authority to enter into the contract asserted lay plaintiff, actual and apparent.
Notwithstanding and apart from the foregoing, let us now turn to defendant’s remaining affirmative defense which challenges the validity and enforcibility of this contract asserted by plaintiff on the ground that it is in contravention of section 439 of the Penal Law.
The crucial question involved and to be resolved is whether plaintiff promised Wheeler a gratuity, gift or benefit to influence, to induce the latter to enter into the said contract. On this issue, I find the scales are weighted against plaintiff and reliance cannot be placed on Ms version. The documentary, as well as the oral proof, clearly dictates such holding. The microfilm record of the check, contrary to plaintiff’s claim, is devoid of any typed indorsement. Significantly, otherwise, the check is admittedly in plaintiff’s hand, whereas the claimed indorsement is typed. It is noteworthy that the date of the check, which was the day it was delivered by plaintiff to Wheeler, was not on a week end, as claimed by plaintiff, but on a Tuesday. Concededly, the check Avas given to Wheeler Avithout the knowledge or consent of defendant.
The credible evidence indeed warrants a finding and the ultimate conclusion that to influence defendant’s employee, Wheeler, to enter into the contract upon which plaintiff predicates this suit, plaintiff did promise to confer a benefit on defendant’s said employee and that, in consideration thereof, the latter entered into such contract; that in pursuance thereof, plaintiff gave defendant’s employee $200, all without the knowledge and consent of defendant.
Section 439 of the Penal Law provides: “ A person who gives, offers or promises to an agent, employee or .servant of another, any gift or gratuity whatever, Avithout the knowledge or consent *1051 of the principal, employer or master of such agent, employee or servant, with intent to influence such agent’s employee’s or servant’s action in relation to his principal’s, employer’s or master’s business; or an agent, employee or servant who without the knowledge and consent of his principal, employer or master, requests or accepts a gift or gratuity or a promise to make a gift or to do an act beneficial to himself or to another, under an agreement or with an understanding that he shall act in any particular manner in relation to his principal’s, employer’s or. master’s business, or receives a reward for having so acted; or an agent, employee or servant, who, being authorized to procure materials, supplies or other merchandise either by purchase or contract for or on account or the credit of his principal, employer or master, or to employ service or labor for his principal, employer or master, receives directly or indirectly, for himself or for another, a commission, discount, gift, gratuity or bonus from the person who makes such sale or contract, or furnishes such materials, .supplies or other merchandise, or from a person who renders such service or labor; and any person who gives or offers such an agent, employee or servant such commission, discount or bonus; and any person, corporation, partnership or other organization who shall use or give to an agent, employee or servant of another, or any agent, employee or servant who shall use, approve, or certify, with intent to deceive the principal, employer or master, any receipt, account, invoice or other document in respect of which the principal, employer or master is interested, which contains any statement which is wilfully false or erroneous in any material particular or which omits to state fully the fact of any commission, money, property or other valuable thing having been given or agreed to be given to such agent, employee or servant, is guilty of a misdemeanor ”.
It is hornbook law that a contract made in violation of a penal statute, although not expressly declared to be void by the statute, is void and unenforcible, whether executory or executed (Griffith v. Wells, 3 Denio 226; Barton v. Port Jackson & Union Falls Plank Road Co., 17 Barb. 397).
The law is also well established that a contract made in violation of section 439 of the Penal Law is unenforcible (Morgan Munitions Supply Co. v. Studebaker Corp. of Amer., 226 N. Y. 94; Sirkin v. Fourteenth St. Store, 124 App. Div. 384; Segal v. Chemical Importing & Mfg. Co., 205 App. Div. 220; Bolotin v. Jefferson, 98 Misc. 603; Continental Wall Paper Co. v. Voight & Sons Co., 212 U. S. 227).
In view of the foregoing, the contract is rendered void and unenforcible and there may be no recovery thereunder.
*1052 Consequently, on plaintiff’s cause of action, judgment is awarded in favor of defendant, and as for the defendant’s counterclaim, said counterclaim is dismissed. The Clerk is directed to enter judgment to this effect. All motions on which decision was reserved are resolved in accordance herewith. The case was tried by the court without a jury.