A. H. Wright and Fred Wright, Trading as A. H. Wright & Son, Appellees, v. Helen Baird, Appellant.

Gen. No. 8,142.

Opinion filed January 25, 1928.

O'HARRA, O'HARRA & O'HARRA, for appellant.

CLYDE P. JOHNSON and HARTZELL, CAVANAGH & MARTIN, for appellees.

MR. PRESIDING JUSTICE SHURTLEFF delivered the opinion of the court.

Appellees filed their suit based upon the common counts to the December term, A. D. 1923, of the county court of Hancock county, to recover for alleged work, labor and services rendered and for materials claimed to have been furnished in changing the plumbing, installing plumbing fixtures, repairing and changing the heating plant in the summer of 1923, in the residence in which appellant and her husband, James D. Baird, then lived and which they owned as tenants in common. Appellant filed the general issue and two separate pleas. The first special plea set out the nature of the work claimed to have been performed by appellees, and further set out the names of said firm and all of their employees and of all persons claimed to have performed any work in connection with said premises, and charged that none of said persons had a certificate authorizing them or either of them to engage in or work at said business of plumbing, but that said persons were engaged in and working at said business of plumbing in violation of the statutes of this State.

The second special plea was the same as the first except in addition thereto it set out an ordinance of the city of Carthage, in said county, regulating the obtaining of licenses for plumbers in said city and passed in pursuance of the act of the general assembly regulating plumbers and the obtaining of licenses to do plumbing work, passed June 29, 1917. Appellees demurred to the two special pleas, which demurrer was sustained by the court. Appellant stood by the special pleas. There was a trial by jury and a verdict in favor of appellees in the sum of $572.39. A motion for a new trial was overruled and judgment entered against appellant for the amount found by the verdict, and appellant has brought the record to this court for review.

There are numerous assignments of error made, and we shall not undertake to cover all of them. The chief error assigned arises out of the ruling of the court in sustaining the demurrer to appellant's two special pleas. Appellant contends that appellees cannot recover for any work done or material furnished in the line of plumbing without having complied with the act of the general assembly regulating plumbers, passed June 29, 1917, and that is one of the principal questions in the case. Appellees contend that the act is a measure merely to procure revenue and in no manner affects the validity of the contract expressed or implied. The title of the act (Cahill's St. ch. 109a) is: "An Act to provide for the licensing of plumbers, and to provide for the supervision and inspection of plumbing and providing penalties for the violation thereof." The act provides: "Any person now or hereafter engaging in or working at the business of plumbing * * * shall first receive a certificate thereof in accordance with the provisions of this Act." Section two, Cahill's St. ch. 109a, ¶ 2, provides: "Any person desiring to engage in or work at the business of plumbing either as a master plumber or employing plumber or as a

journeyman plumber, shall make application to a board of examiners * * * and be compelled to pass such examination as to his qualifications as said board with the approval of the Department of Registration and Education may direct.'' The act provides for the creating of a board of examiners, their meetings, the scope of the examination, namely, that said board shall examine said applicants as to their practical knowledge of plumbing, house drainage and plumbing ventilation and other matters, and if satisfied of the competency of such applicant, shall thereupon issue a certificate to such applicant authorizing him to engage in or work at the business of plumbing, whether as a master plumber, employing plumber, or as a journeyman plumber. The act provides for the fees to be paid for such certificates and that they shall be renewed each year. Section five, Cahill's St. ch. 109a, ¶ 5, of the act requires each city, town or village in the State, having a system of water supply or sewerage, by ordinance or by-laws, within three months after the passage of the act, and with the advice of the department of public health, to prescribe rules and regulations for the materials, construction, alteration and inspection of all plumbing and sewerage placed in or in connection with any building in such city, town or village, and section five further provides: ''and the board of health or proper authorities shall further provide that no plumbing work shall be done except in case of repairing of leaks without a permit being first issued therefor and upon such terms and conditions as such city, town or village shall prescribe.''

The enforcement of the act as against cities, towns and villages is specially placed in the hands of the Attorney General of the State and the department of registration and education, with directions to use the writ of mandamus. The act further provides that any person violating any provision of the act shall be

guilty of a misdemeanor and penalties are provided therefor.

It seems plain from the reading of the statute that the measure is broader than a mere act to procure revenue, and that its purport is to conserve the health of the citizens of the State, passed under the police power of the State. Under a substantially similar act, passed in 1897, when before the court in *Douglas v. People,* 225 Ill. 536, the court said:

"It is first contended that the act hereinbefore referred to is in conflict with those provisions of the constitution of this State and of the United States which provide that no person shall be deprived of life, liberty or property without due process of law. The right of the citizen to follow any legitimate business, occupation or calling which he may see fit to engage in, and to use such right as a means of livelihood, is fully recognized in the constitutions of this State and of the United States. (*Gillespie v. People,* 188 Ill. 176; *Bessette v. People,* 193 id. 334.) Such right, however, is subject to the paramount right of the State to impose upon the enjoyment thereof any reasonable regulation the public welfare may require, and the courts have frequently held that the legislatures of the several States may impose any restraint and prescribe any requirement they may deem proper for the protection of the public against the evils resulting from the incapacity and ignorance of persons engaged in the plumbing business, as master plumbers, employers of plumbers or journeymen plumbers. *Singer v. State of Maryland,* 8 L. R. A. 551; *People v. Warden of the City Prison,* 27 id. 718; *State v. Gardner,* 58 Ohio St. 599; 41 L. R. A. 689."

And the court further said: "In *People v. Warden of the City Prison, supra,* the Court of Appeals of New York was considering the constitutionality of an act providing for the licensing of employing plumbers, and that court said: 'We know that important plumb-

ing work calls for plans and designs and requires skilled supervision. It is some guaranty of these requirements being met that the plumber employed upon the particular work, and who must employ plumbers and assistants in carrying out the work engaged upon, is competently certified and therefore held out to be skilled and capable in his business. The layman, in his ignorance, is obliged to put some trust in the plumber he engages, for the plumber's work is not only one calling for the exercise of skill, but it is done in places which are dark or more or less inaccessible. The legislature, in creating a system by which the qualifications of plumbers who propose to have work performed by others under their direction shall be determined, as it seems to me, aids the citizen, in an important degree, in placing his confidence and furnishes some safeguard against the performance of bad and unsafe work. That the men employed by the master plumber may prove untrustworthy in practice or may neglect the work committed to them certainly can furnish no ground for attacking the purpose of the statute, for the presumption and the natural probability are the other way,—that a master plumber who has been certified by the board will exercise care in the selection of his employees, and he will be competent to see and correct their faults and omissions. Every reason, in my opinion, which bears upon the citizen's comfort and health demands that we sustain this statute as a step in the right direction.' ''

But it is contended by appellees that inasmuch as the act, in terms, does not declare contracts in violation of the act void, appellees may recover. We are not in accord with this view. The nature of the certificate or license is fully defined in *Wilkie v. City of Chicago*, 188 Ill. 444, 453: ''It is insisted that the term 'certificate,' used in the law, does not mean a license, and therefore the provisions are not inconsistent. The object of the act is to be stated in its title, and one of

its purposes is there declared to be the 'licensing' of plumbers. The certificate, by express terms, authorizes the recipient to engage in the business of plumbing. A certificate or paper having that effect is a license, which, in its general sense, is an authority to do something which without such authority is prohibited. Webster defines a license to be a formal permission from proper authorities to perform certain acts or carry on a certain business which without such permission would be illegal. The certificate is within that definition and is a license.''

It has been held in *Douthart v. Congdon,* 197 Ill. 349, 355: '' 'Where, by the terms of a statute or city ordinance, it is made illegal for a broker to exercise his business without a license, a broker cannot recover commissions for services rendered without such license.' '' In this case the court further said:

''The ordinance in the case at bar denounced as unlawful the prosecution of the business of a broker in grain without a license, and also provided for the infliction of a fine as a punishment or penalty for each transaction of a broker in violation of the ordinance. The particular transaction for which the sum of $31.25 was charged and included in these notes was an unlawful act, and subjected the said brokers to punishment by way of a fine. It was illegal, and entered into and formed a part of the consideration for the promise contained in each of the notes. The rule has long been established that if any part of an entire consideration for a promise or any part of an entire promise be illegal the whole contract is void. (*Henderson v. Palmer,* 71 Ill. 579; *Tenney v. Foote,* 95 id. 99; Metcalf on Contracts, 246; Addison on Contracts, 905; Chitty on Contracts, 730; 1 Parsons on Contracts, 456; 1 Parsons on Notes and Bills, 217; Story on Promissory Notes, 190; Byles on Bills, 211; Chitty on Bills, 94; 4 Am. & Eng. Ency. of Law,—2d ed.—192; 17 Am.

& Eng. Ency. of Law,—2d ed.—308, *Didoe v. Webb,* 20 Ohio St. 431.)''

The court held in that case: "The whole consideration is the basis of the whole promise. The parts of the consideration are inseparable. Such is the doctrine of the text books."

Substantially the same rule is laid down in *Friedland v. Isenstein,* 191 Ill. App. 109, and in *Weinshenker v. Epstein,* 176 Ill. App. 104. It has been held that a person practicing one of the professions could not recover for his services unless he had a license to practice. *Baxter v. City of Venice,* 271 Ill. 233; *Valley Terminal Railway v. Eggman,* 222 Ill. App. 457.

It was shown by the special pleas that the claim for the services rendered and material furnished by appellees was to cover services and material in appellant's home in the city of Carthage, in the county of Hancock, where appellant resided, and that the city of Carthage had complied with the said act. Appellees bring their suit under the common counts and claim to recover upon a completed contract to do specified work and furnish materials. The price for the labor was agreed upon. It is plain that appellees cannot recover upon this contract under the proofs and record in this cause. It is the opinion of this court that appellees can recover nothing for work and services performed in the line of plumbing or doing plumbing work or while engaged in the business of plumbing under the proofs in this case, unless they have complied with the legislative act. As to whether appellees may recover for any material furnished by appellees to appellant for the work in question, we can only add that the record in this case does not raise that question, and the proofs are too incomplete to enable us to pass upon it.

There is merit in the assignment of error that the proofs do not show the fair cash market value of the goods and materials furnished by appellees, and ob-

jection should have been sustained to the method of proving that fact. Objection was made to the introduction of the testimony as to the goods furnished. It was shown that nearly all of the goods and materials sold or furnished were recorded on an original slip by a salesman, and that the slips were turned into the bookkeeper to post upon the books. Appellees had destroyed the slips nearly four years ago. The books were admitted in evidence over the objection of appellant. There should have been some further testimony as to the delivery of the goods and materials. Some other errors are pointed out which doubtless will be avoided on another trial.

For the reasons stated the judgment of the county court of Hancock county is reversed and the cause remanded with directions to that court to overrule the demurrer to appellant's first and second special pleas, and for further proceedings in accordance with the views expressed in this opinion.

*Reversed and remanded with directions.*