599 F.2d 488
 26 UCC Rep.Serv. 513
 BANKERS TRUST COMPANY, Plaintiffs-Appellees,
and
Regent Leasing Corp., Plaintiff,
v.
LITTON SYSTEMS, INC., Defendant-Appellant,
and
Litton Business Telephone Systems, Inc., Royal Typewriter
Company, Inc., and Royal Typewriter Company, a
division of Litton Business Systems,
Inc., Defendants.
 No. 463, 78-7430.
 United States Court of Appeals,
Second Circuit.
 Argued Jan. 16, 1979.
Decided May 14, 1979.
 
 Jack H. Weiner, New York City (Charles Leeds, New York City, of counsel), for plaintiff-appellee Bankers Trust Company.
 Irwin B. Robins, New York City (Otterbourg, Steindler, Houston & Rosen, P. C., New York City, of counsel), for plaintiff-appellee Chemical Bank.
 Malcolm I. Lewin, New York City (Lans, Feinberg & Cohen, Deborah E. Lans, New York City, of counsel), for defendant-appellant Litton Systems, Inc.
 Before MOORE and MANSFIELD, Circuit Judges and WYATT,* District Judge.
 MOORE, Circuit Judge:
 
 
 1
 This is an appeal by defendant Litton Systems, Inc. from a monetary judgment against it and in favor of plaintiffs Bankers Trust Company (Bankers Trust) and Chemical Bank (Chemical) in the sums of $113,495.55 (Bankers Trust) and $126,371.55 (Chemical). The judgment, denominated "Partial Judgment" and so characterized in the "Notice of Appeal", (the district court having directed entry of the judgment and certified it as appealable, Rule 54(b), F.R.Civ.P.), came into being under the following rather confused circumstances. Because of appellant's position upon appeal that the trial court's error was in ignoring "the settled decisional law of New York and the federal jurisdiction which law, Inter alia, declares void and unenforceable obligations induced through commercial bribery" an attempt will be made to try to limit an exposition of the facts and procedures to that issue. The court's subject matter jurisdiction was based on diversity of citizenship. 28 U.S.C. § 1332 (1976).
 
 
 2
 The parties defendant may be referred to collectively as "Litton" because they were subsidiaries wholly owned, directly or indirectly, of Litton Industries, Inc. (not a defendant) and "Royal" also a division of a subsidiary of Litton Industries, Inc.
 
 
 3
 In 1973 and 1974 Litton decided to purchase photocopiers for use in the branch offices of its private telephone business. A Royal salesman, Angelo Buquicchio, recommended that Litton lease the photocopiers from Regent Leasing Corporation, a business entirely independent of Litton or Royal. Unbeknownst to Royal or Litton, Buquicchio was to receive from Regent certain "service fees" which may Arguendo be called bribes. Regent was to purchase the equipment from Royal and then lease it to Litton.
 
 
 4
 In order to finance its purchases Regent borrowed from Bankers Trust and Chemical, assigning to them the Litton leases as security. A clause in the leases permitted assignment and provided that the assignees' rights would be independent of any claims or offsets of Litton as against Regent.
 
 
 5
 Litton in early 1976 defaulted in meeting its obligations to the Banks under the leases. To recover the sums due, the amount due the bankers being stated as "First Claim by Bankers Trust" and "Second Claim by Chemical Bank" Bankers Trust, Chemical and Regent brought suit for the amount due them. Third and Fourth claims by Bankers Trust and Chemical respectively were for failure to return the equipment. A Fifth Clause by both banks was for costs and attorneys' fees.
 
 
 6
 A plethora of pleadings, answers, defenses and counterclaims followed. During the course of ensuing discovery, appellant claims that "Regent's president, Irving Fineman . . . admitted paying what he first referred to euphemistically as 'service fees' to several Royal salesmen, particularly Buquicchio, so they would push leases generally and Regent's leases specifically for transactions they handled". (Appellant's Br. at 8).
 
 
 7
 In June, 1977, plaintiffs moved for summary judgment. Needless to say, these motions brought forth more than a score of supporting and opposing affidavits, excerpts from depositions and memoranda for and against the motion. The burden of the opposition was that Regent's bribery of Royal's employees renders Litton's obligations a nullity and a defense against the banks as holders in due course.
 
 
 8
 The trial court, after a review of the facts pertaining to the lease transactions, put to one side the factual issue as to whether the alleged kickbacks were illegal and addressed the only relevant question of whether the banks had notice of the payments and were holders in due course. As to these facts he found that the defendants had been given an ample opportunity to conduct discovery and had failed to offer any affirmative proof as required by F.R.Civ.P. 56(e) to contradict the bank officers' flat denial of any knowledge at the time they took the assignments that service fees had been, or were going to be, paid.
 
 
 9
 The trial court, considered each of four principal defenses to the banks' motions for summary judgment and disposed of them as follows:
 
 
 10
 1. That the clause in each lease whereby the lessee agreed not to assert against the assignee any defenses or counterclaims against the lessor was contrary to New York public policy and void. The court, citing New York Uniform Commercial Code § 9-206(1)[1] (McKinney 1964) (hereinafter cited as N.Y.U.C.C.) and B. V. D. Co. v. Marine Midland Bank, 46 A.D.2d 51, 360 N.Y.S.2d 901 (1st Dept. 1974), concluded otherwise. We agree.
 
 
 11
 2. That there was a close relationship between Regent and the banks which justified a finding that the banks did not take the assignments in good faith and therefore were not holders in due course. The trial court correctly found that no proof was submitted which would have warranted such an inference.
 
 
 12
 3. That there was a valid termination agreement properly exercised. The court found that the leases prohibited oral modification and specified the entire agreement of the parties and, in addition, that the banks had no notice of any such agreement prior to taking the assignments. Accordingly, the court held that there was no valid cancellation agreement. We agree.
 
 
 13
 4. That the alleged service fee payments were illegal. This defense goes to the heart of this appeal and constitutes the main portion of appellant's argument. In sum, it is that the alleged kickbacks to Buquicchio rendered the leases between Regent and Litton so utterly void that they became nullities, never to have any legal validity even for Bona fide holders in due course without notice of the side deal Buquicchio made for his own benefit. Buquicchio's conduct was arguably illegal under New York Penal Law § 180.00 (McKinney Supp.1978) which declares commercial bribery to be a criminal offense. Litton claims that the bribes were such "illegality of the transaction, as renders the obligation of the party a nullity . . ." and that, therefore, the leases were unenforceable even by a holder in due course. N.Y.U.C.C. § 3-305(2)(b).
 
 
 14
 The court carefully analyzed the New York cases on the subject and concluded that whereas "such payments could constitute a defense as against Regent . . . the making of such payments could not be asserted against a holder in due course . . . ." Accordingly, it granted the banks' motions for summary judgment.
 
 
 15
 In coming to the conclusion that the Buquicchio payments "could constitute a defense as against Regent" the court relied on McConnell v. Commonwealth Pictures Corp., 7 N.Y.2d 465, 199 N.Y.S.2d 483, 166 N.E.2d 494 (1960) and denied Regent's motion for summary judgment.
 
 
 16
 However, as to the banks, the court reached a different result. The court concluded that
 
 
 17
 "(I)n using the term 'nullity' the Legislature intended to provide a defense against a holder in due course only in cases where the obligation sued upon is void on its face (e. g. a wagering contract or a contract to perform an illegal act), and was not intended to provide a defense against such a holder where one of the parties to the original contract might have an option to declare it void because some illegal conduct in which the other party may have engaged in the course of the negotiations which gave rise to the contract."
 
 
 18
 There is a distinction here which should be preserved: the lease contracts for photocopiers were not themselves illegal; the contract to bribe a person in connection with those contracts was illegal. Although the contract being sued upon is not itself illegal, under McConnell v. Commonwealth Pictures Corp., 7 N.Y.2d 465, 199 N.Y.S.2d 483, 166 N.E.2d 494 (1960), and Sirkin v. Fourteenth Street Store, 124 App.Div. 384, 108 N.Y.S. 830 (1st Dept. 1908), a contract would be unenforceable in a suit brought by the wrongdoer if there were a direct connection between the illegal bribe and the obligation sued upon, in this case, the lease. Assuming that Regent, the wrongdoer, cannot enforce the lease contracts, the question which remains is whether a holder in due course may enforce lease contracts not enforceable by the holder's assignor because the contracts were induced by commercial bribery committed by the assignor.
 
 
 19
 The illegality defense under N.Y.U.C.C. § 3-305(2)(b) is available only if under the applicable state law the effect of the illegality is to make the obligation entirely null and void; the defense is ineffective against a holder in due course if the illegality causes the contract to be merely voidable. Official Comment 6, N.Y.U.C.C. § 3-305. An examination of the language in the New York decisions on the enforceability of bribery-induced contracts suggests that New York holds such contracts to be "void". Sturm v. Truby, 245 App.Div. 357, 361, 282 N.Y.S. 433, 437 (4th Dept. 1935); Sirkin v. Fourteenth Street Store, 124 App.Div. 384, 393, 108 N.Y.S. 830, 837 (1st Dept. 1908), Cited with approval in McConnell v. Commonwealth Pictures Corp., 7 N.Y.2d 465, 470, 166 N.E.2d 494, 497, 199 N.Y.S.2d 483, 486 (1960); and Shemin v. A. Black & Co., 32 Misc.2d 1046, 225 N.Y.S.2d 805 (Sup.Ct.N.Y.Co.1962), Rev'd on procedural grounds, 39 Misc.2d 254, 240 N.Y.S.2d 622 (1st Dept. 1963). Nonetheless, upon further analysis, we conclude that under New York law a holder in due course may treat a contract induced by illegal bribery as merely voidable.
 
 
 20
 The problems and consequences of using the terms "void" and "voidable" were recognized by the Restatement of Contracts:
 
 
 21
 "Confusion in the use of the words 'void' and 'voidable' is common, chiefly because it frequently makes no difference whether a contract is void or voidable. In either event the injured party can usually escape liability, and in most cases that is the only question involved. The difference becomes important, however, where property is transferred and subsequently passes to a bona fide purchaser for value. If the original transfer is Voidable the innocent purchaser acquires an indefeasible title. A similar consequence follows the negotiation of a negotiable instrument that is Voidable. Furthermore, a contract which is Voidable may be ratified while a Void transaction cannot be." Restatement of Contracts § 475, Comment b (1932) (emphasis added).
 
 
 22
 Since the New York cases on illegal contracts induced by commercial bribery do not involve holders in due course, one could reasonably assume that the authors of those opinions were using the term "void" loosely, without regard to its importance when a holder in due course enters the picture. However, one portion of Sirkin v. Fourteenth Street Store, supra, suggests that the court meant the contract to be truly void. The opinion states that the contract procured by illegal bribery at issue in that case could not be ratified, as could an ordinary contract induced by fraud. 124 App.Div. at 391, 108 N.Y.S. at 835. In light of the Comment to § 475 of the Restatement quoted above, the court apparently was applying to the contract a characteristic of true voidness. Thus, if Sirkin is accepted at face value, the plaintiffs' claims would be unenforceable.
 
 
 23
 It is necessary, however, to consider the basic policy supporting the New York cases, including McConnell and Sirkin. Once more, the Restatement of Contracts offers a concise explanation. Comment (a) to § 598 states that when a plaintiff sues to recover on an illegal bargain, courts deny relief because the Plaintiff is a wrongdoer, not because they favor the defendant. Courts will not aid a person "who founds his cause of action upon his own immoral or illegal act". Restatement of Contracts § 598, Comment (a) (1932); See also Restatement (Second) of Contracts, Tent.Dr.No.23, Introductory Note to Ch. 14, p. 46 (1977); 14 Williston on Contracts § 1630A (3d ed. 1972). This rationale is precisely the policy articulated in the New York decisions. In McConnell the court said that the court's concern is not with the position of the defendant; instead, the question is whether the plaintiff should be denied a recovery for the sake of public interests. 7 N.Y.2d at 469, 166 N.E.2d at 496, 199 N.Y.S.2d at 485. The well-known maxim that no one shall be permitted to profit by his own fraud summarizes the policy. See Riggs v. Palmer, 115 N.Y. 506, 511-12, 22 N.E. 188, 190 (1889). See also Reiner v. North American Newspaper Alliance, 259 N.Y. 250, 256, 181 N.E. 561, 563 (1932); Sturm v. Truby, supra, 245 App.Div. at 360, 282 N.Y.S. at 437; Sirkin v. Fourteenth Street Store, supra, 124 App.Div. at 389-90, 394, 108 N.Y.S. at 834, 837.
 
 
 24
 Where an innocent third party, such as a holder in due course, is suing upon an illegal contract, the policy argument is inapplicable because the plaintiff has done no wrong for which it should be penalized.[2] Moreover, insofar as it is enforcing the rights of an innocent party, the court does not blacken its name or participate in a wrong when it enforces an illegal contract. See Havighurst, Book Review, 61 Yale L.J. 1138, 1145 (1952).
 
 
 25
 One New York court has enforced the rights of a holder in due course of a note in the face of the defense that the note had been given as an unlawful preference by a bankrupt to one of his creditors. New Howard Mfg. Co. v. Cohen, 207 App.Div. 588, 202 N.Y.S. 449 (1st Dept. 1924).[3] In addition, the New York Court of Appeals has recognized a general rule that a holder in due course of a negotiable instrument is unaffected by the fact that it originated in an illegal consideration. Sabine v. Paine, 223 N.Y. 401, 119 N.E. 849 (1918).[4]
 
 
 26
 Bribery which induces the making of a contract is much like a fraud which has the same result. The bribery of a contracting party's agent or employee is, in effect, a fraud on that party. See Restatement of Contracts § 577, Illustrations 4 & 11 (1932). Inasmuch as the New York Uniform Commercial Code allows a holder in due course to enforce a contract induced by fraud, § 3-305(2), the same treatment should be given to a contract induced by bribery. The result ought not be changed by the additional fact that commercial bribery is a criminal offense in New York.
 
 
 27
 Finally, it would be poor policy for courts to transform banks and other finance companies into policing agents charged with the responsibility of searching out commercial bribery committed by their assignors. We doubt that denying recovery to holders in due course would have an appreciable effect on the frequency of commercial bribery. Moreover, the holder in due course concept embodies important policies which must be weighed against the policy of holding void contracts induced by bribery. To paraphrase Professor Gilmore, the holder in due course is protected not because of his praiseworthy character, but to the end that commercial transactions may be engaged in without elaborate investigation of the process leading up to the contract or instrument and in reliance on the contract rights of one who offers them for sale or to secure a loan. Gilmore, The Commercial Doctrine of Good Faith Purchase, 63 Yale L.J. 1057 (1954); See Note 4, Supra. Abrogation of the rights of a holder in due course is not warranted in this case.
 
 
 28
 The appellant's other arguments are without merit and were adequately answered by the district court. For the reasons stated above, the decision of the district court is affirmed.
 
 
 
 *
 Honorable Inzer B. Wyatt, United States District Judge for the Southern District of New York, sitting by designation
 
 
 [1]
 N.Y.U.C.C. § 9-206(1) reads as follows:
 "(1) Subject to any statute or decision which establishes a different rule for buyers or lessees of consumer goods, an agreement by a buyer or lessee that he will not assert against an assignee any claim or defense which he may have against the seller or lessor is enforceable by an assignee who takes his assignment for value, in good faith and without notice of a claim or defense, except as to defenses of a type which may be asserted against a holder in due course of a negotiable instrument under the Article on Commercial Paper (Article 3). A buyer who as part of one transaction signs both a negotiable instrument and a security agreement makes such an agreement."
 
 
 [2]
 See 14 Williston on Contracts § 1631 (3d ed. 1972):
 "An innocent plaintiff may recover on an illegal agreement which is not declared void by statute. Such innocence exists where the plaintiff is justifiably ignorant of the circumstances causing the illegality.
 For example, a holder in due course may recover on a negotiable instrument originally given as part of an illegal transaction."
 
 
 [3]
 In New Howard, the court said:
 "This case is an authority, so strong as to be controlling, that, where the statute itself does not make a contract void, but, simply prohibits the act, or where the contract is only void as a matter of public policy, the usages of trade and the necessity for protection to negotiable instruments require that the contract should be enforced. To hold that a contract not made void by statutory declaration could be defended as against a Bona fide purchaser, either because of statutory illegality, or because of illegality by reason of fraud or other offenses Mala in se, would be a serious embarrassment to the use of these instruments as they are commonly used in trade, as representing actual money.
 In order to make contracts, whether Mala in se or Mala prohibita, void Ab initio, a statutory declaration to that effect is necessary; and, without that statutory declaration, which does not here exist, the note is good in the hands of a Bona fide purchaser." 207 App.Div. at 591-2, 202 N.Y.S. at 452.
 See also 14 Williston on Contracts § 1676 (3d ed. 1972).
 
 
 [4]
 In the words of the Court of Appeals:
 "The rule (making a usurious contract null and void Ab initio ) is an exception to the general principle that a negotiable instrument, in the hands of an innocent holder, who had received it in good faith in the ordinary course of business, for value, and without notice of a defense, is not invalid and is enforceable by the holder. The general principle has been stated: 'The Bona fide holder for value who has received the paper in the usual course of business is unaffected by the fact that it originated in an illegal consideration, without any distinction between cases of illegality founded in moral crime or turpitude, which are termed Mala in se and those founded in positive statutory prohibition which are termed Mala prohibita. The law extends this peculiar protection to negotiable instruments, because it would seriously embarrass mercantile transactions to expose the trader to the consequences of having the bill or note passed to him impeached for some covert defect.' (1 Daniel on Negotiable Instruments (6th ed.) section 197.)." 223 N.Y. at 403-4, 119 N.E. at 850.