(No. 73855.—

# KEDZIE AND 103RD CURRENCY EXCHANGE, INC., Appellant, v. BEULAH M. HODGE, Appellee.

*Opinion filed August 26, 1993.*

McMORROW, J., took no part.
BILANDIC, J., dissenting.

Scott A. Slutsky and Roy P. Amatore, both of Chicago, and Gerald R. Slutsky, of Northbrook, for appellant.

Franklin P. Auwarter, Kathleen H. Gorr and Anne K. Lewis, of Mayer, Brown & Platt, of Chicago, for appellee.

JUSTICE FREEMAN delivered the opinion of the court:

We consider here whether a holder in due course of a check is precluded from payment as against the drawer where the check was given in exchange for contract services for which the provider was required to be, but was not, a licensed plumber. We conclude such a claim is not precluded.

## BACKGROUND

Pursuant to a written "work order," Fred Fentress agreed to install a "flood control system" at the home of Eric and Beulah Hodge of Chicago for $900. In partial payment for the work, Beulah Hodge drafted a personal check payable to "Fred Fentress—A-OK Plumbing" for $500 from the Hodges' joint account at Citicorp Savings.

The system's components were not delivered to the Hodges' home as scheduled. And, when Fentress failed to appear on the date set for installation, Eric Hodge telephoned him to announce the contract "cancelled." Hodge also told Fentress that he would order Citicorp Savings not to pay the check Fentress had been given.

Records of Citicorp Savings confirm acknowledgment of a stop-payment order entered the same day.

Nevertheless, Fentress presented the check at the Kedzie & 103rd Street Currency Exchange (Currency Exchange), endorsing it as "sole owner" of A-OK Plumbing, and obtained payment. However, when the Currency Exchange later presented the check for payment at Citicorp Savings, payment was refused in accordance with the stop-payment order.

The Currency Exchange, alleging it was a holder in due course (see Ill. Rev. Stat. 1989, ch. 26, par. 3—302), then sued Beulah Hodge, as drawer of the check, and Fentress for the amount stated. Hodge, in turn, filed a counterclaim against Fentress. Hodge also moved to dismiss the Currency Exchange's action against her (see Ill. Rev. Stat. 1989, ch. 110, par. 2—619). The disposition of Hodge's motion gives rise to this appeal.

Hodge asserted a defense provided by section 3—305 of the Uniform Commercial Code (UCC) (Ill. Rev. Stat. 1989, ch. 26, par. 3—305). Under that section, the claim of a holder in due course of a negotiable instrument may be barred based on "illegality of the transaction." (Ill. Rev. Stat. 1989, ch. 26, par. 3—305(2)(b).) Hodge contended Fentress was not a licensed plumber as was required under the Illinois Plumbing License Law (see Ill. Rev. Stat. 1989, ch. 111, pars. 1101 through 1140). The director of licensing and registration of the Chicago department of buildings and the keeper of plumbing licensing records of the Illinois Department of Public Health provided affidavits supporting that contention. Hodge asserted that, because Fentress was in violation of the Illinois Plumbing License Law, his promised performance under the contract gave rise to the requisite "illegality" to bar the Currency Exchange's claim for payment.

The circuit court granted the motion and dismissed the Currency Exchange's action against Hodge. The appellate court, with one justice dissenting, affirmed. (234 Ill. App. 3d 1017.) Pursuant to Supreme Court Rule 315(a) (134 Ill. 2d R. 315(a)), we allowed the Currency Exchange's petition for leave to appeal.

## DISCUSSION

### Section 2—619(a)(9)

Hodge moved for involuntary dismissal under section 2—619 of the Code of Civil Procedure. (Ill. Rev. Stat. 1989, ch. 110, par. 2—619(a)(9).) Generally, section 2—619 affords a "means of obtaining *** a summary disposition of issues of law or of easily proved issues of fact, with a reservation of jury trial as to disputed questions of fact." (Ill. Ann. Stat., ch. 110, par. 2—619, Historical & Practice Notes, at 662 (Smith-Hurd 1983); see *Barber-Colman Co. v. A & K Midwest Insulation Co.* (1992), 236 Ill. App. 3d 1065, 1071.) Subsection (a)(9), upon which Hodge's motion specifically was based, permits dismissal where "the claim asserted *** is barred by other affirmative matter avoiding the legal effect of or defeating the claim." Ill. Rev. Stat. 1989, ch. 110, par. 2—619(a)(9).

The phrase "affirmative matter" encompasses any defense other than a negation of the essential allegations of the plaintiff's cause of action. (See 4 R. Michael, Illinois Practice §41.7 (1989).) For that reason, it is recognized that a section 2—619(a)(9) motion to dismiss admits the legal sufficiency of the plaintiff's cause of action much in the same way that a section 2—615 motion to dismiss admits a complaint's well-pleaded facts. *Barber-Colman*, 236 Ill. App. 3d at 1073.

If the "affirmative matter" asserted is not apparent on the face of the complaint, the motion must be supported by affidavit. (Ill. Rev. Stat. 1989, ch. 110, par. 2—619(a); see also 4 R. Michael, Illinois Practice §41.8, at 334 (1989) (observing that "materials of the same nature as are used to support motions for summary judgment" may serve as support for the motion), citing *Sierens v. Clausen* (1975), 60 Ill. 2d 585, 588 (noting, in the absence of supporting affidavits, that answers to interrogatories may be used in evidence to the same extent as discovery depositions and that discovery depositions may be used for any purpose for which affidavits may be used).) By presenting adequate affidavits supporting the asserted defense (see 134 Ill. 2d R. 191), the defendant satisfies the initial burden of going forward on the motion. The burden then shifts to the plaintiff.

The plaintiff must establish that the defense is unfounded or requires the resolution of an essential element of material fact before it is proven. The plaintiff may do so by "affidavit[ ] or other proof." (Ill. Rev. Stat. 1989, ch. 110, par. 2—619(c).) A counteraffidavit is necessary, however, to refute evidentiary facts properly asserted by affidavit supporting the motion else the facts are deemed admitted. If, after considering the pleadings and affidavits, the trial judge finds that the plaintiff has failed to carry the shifted burden of going forward, the motion may be granted and the cause of action dismissed.

An appeal from such a dismissal is the same in nature as one following a grant of summary judgment and is likewise a matter given to *de novo* review (see *Myers v. Health Specialists, S.C.* (1992), 225 Ill. App. 3d 68, 72 (stating the standard as it relates to summary judgment)). The appellate court must consider whether the existence of a genuine issue of material

fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law. 4 R. Michael, Illinois Practice §41.9 (1989).

## Hodge's Motion

The legal sufficiency of the Currency Exchange's action, including the allegation that it possesses the check as a holder in due course, is admitted by Hodge's motion. The reason asserted for dismissal—"illegality" grounded upon noncompliance with a statutory licensure requirement—was raised properly as affirmative matter and supported by affidavit.

The Illinois Plumbing License Law requires that all plumbing, including "installation *** or extension" of "drains," be performed by plumbers licensed under the Act. (Ill. Rev. Stat. 1989, ch. 111, pars. 1102(5), (8), 1103.) The affidavits establish that Fentress was not licensed either by the City of Chicago or the State of Illinois. That failure is a violation of the Illinois Plumbing License Law and is punishable as a misdemeanor. Ill. Rev. Stat. 1989, ch. 111, pars. 1103, 1128.

Hodge therefore carried the burden of going forward.

No counteraffidavit was supplied. For purposes of the motion, the fact that Fentress was not a licensed plumber is deemed admitted. No other matter was presented to refute the defense.

No material fact remains to be resolved. The question is simply whether Hodge is entitled, as a matter of law, to a judgment of dismissal in view of the defense asserted under UCC section 3—305.

## "Illegality" under Section 3—305

Section 3—305 provides, in relevant part:

"[A] holder in due course \*\*\* takes the instrument free from

\*\*\*

(2) all defenses of any party to the instrument with whom the holder has not dealt except

\*\*\*

(b) \*\*\* illegality of the transaction, as renders the obligation of the party a nullity." (Ill. Rev. Stat. 1989, ch. 26, par. 3—305.)

The concern is whether noncompliance by Fentress with the Illinois Plumbing License Law gives rise to "illegality of the transaction" with respect to the contract for plumbing services so as to bar the claim of the Currency Exchange, a holder in due course of the check initially given Fentress.

The issue of "illegality" arises "under a variety of statutes." (Ill. Ann. Stat., ch. 26, par. 3—305, Uniform Commercial Code Comment, at 66 (Smith-Hurd Supp. 1992).) In view of the diverse constructions to which statutory enactments are given, "illegality" is, accordingly, a matter "left to the local law." (Ill. Ann. Stat., ch. 26, par. 3—305, Uniform Commercial Code Comment, at 66 (Smith-Hurd Supp. 1992).) Even so, it is only when an obligation is made "entirely null and void" under "local law" that "illegality" exists as one of the "real defenses" under section 3—305 to defeat a claim of a holder in due course. (Ill. Ann. Stat., ch. 26, par. 3—305, Uniform Commercial Code Comment, at 66 (Smith-Hurd Supp. 1992).) In effect, the obligation must be no obligation at all. If it is "merely voidable" at the election of the obligor, the defense is unavailable. Ill. Ann. Stat., ch. 26, par. 3—305, Uniform Commercial Code Comment, at 66 (Smith-Hurd Supp. 1992).

Historically, this court has recognized "illegality" to arise only in view of legislative declaration affecting

both the underlying contract or transaction and the instrument exchanged upon it. (*Pope v. Hanke* (1894), 155 Ill. 617, 628-30; *Town of Eagle v. Kohn* (1876), 84 Ill. 292, 295-96.) A contract or transaction which is void must certainly negate the obligation to pay arising from it as between the contracting parties. (*Pope*, 155 Ill. at 626; *Kohn*, 84 Ill. at 296.) But, unless an instrument memorializing the obligation is also made void, an innocent third party who has no knowledge of the circumstances of the initial contract or transaction may yet claim payment of it against the drawer or maker. *Pope*, 155 Ill. at 626; *Kohn*, 84 Ill. at 296.

Thus, "illegality" has been held to defeat the claims of holders in due course in cases involving contracts of a gaming nature or for retirement of gambling debts (see Ill. Rev. Stat. 1989, ch. 38, par. 28—1). (See *Riordon v. McCabe* (1930), 341 Ill. 506; *Pope*, 155 Ill. 617; *Kohn*, 84 Ill. 292; *Chapin v. Dake* (1870), 57 Ill. 295.) Owing to a deep-seated hostility toward nongovernmental-sanctioned gambling, our legislature has declared that any instrument associated with such activity is void, independent of the status of who may possess it. (Ill. Rev. Stat. 1989, ch. 38, par. 28—7; *Riordon*, 341 Ill. at 509; *Pope*, 155 Ill. at 628-30; *Kohn*, 84 Ill. at 295; *Chapin*, 57 Ill. at 298.) The absence of similar legislative declaration as for an instrument given upon a usurious contract must account, in part, for the conclusion that usury has not been held to give rise to "illegality" as a defense against a holder in due course. See Ill. Rev. Stat. 1989, ch. 17, par. 6413; see also *Marks v. Pope* (1939), 370 Ill. 597; *Richter v. Burdock* (1913), 257 Ill. 410; Ill. Ann. Stat., ch. 26, par. 3—305, Illinois Code Comment, at 180 (Smith-Hurd 1963).

That the existence or absence of legislative declaration controls the issue was recognized by our appellate

court in *McGregor v. Lamont* (1922), 225 Ill. App. 451, a case involving circumstances similar to those here. John T. Lamont was the maker of a note used to pay for shares of stock issued by the Corn Belt Farmers' Cooperative Association (Association). Lamont's note subsequently came into the possession of Robert Roy McGregor, a holder in due course. When Lamont failed to pay on the note, McGregor filed suit and obtained a judgment against him.

Lamont moved to vacate the judgment. Lamont asserted that the purchase of the shares of stock was void under the Illinois Securities Law because the Association had not complied with its requirements. Because the transaction was void, Lamont concluded, the note given in payment must also be void despite McGregor's status as a holder in due course.

The appellate court noted that the Illinois Securities Law did, indeed, make transactions for the sale of shares of stock void based on noncompliance with the Law's requirements. (*McGregor*, 225 Ill. App. at 453-54, 455.) But the court noted that only the "sale and contract of sale" of shares of stock were expressly made void, not instruments exchanged upon such contracts. (*McGregor*, 225 Ill. App. at 455.) Absent legislative declaration making such instruments void, the court declined to recognize a defense to McGregor's action for payment on the note. *McGregor*, 225 Ill. App. at 455.

The same rule obtains in New Jersey. In *New Jersey Mortgage & Investment Corp. v. Berenyi* (App. Div. 1976), 140 N.J. Super. 406, 356 A.2d 421, a holder in due course of a note was permitted to maintain a claim for its payment even though the note had been initially obtained by a corporation in a transaction which violated an injunctive order. No statute rendered the note void, and the holder in due course had no knowledge

or notice of the injunction. (*Berenyi*, 140 N.J. Super. at 408, 356 A.2d at 423.) But in *Westervelt v. Gateway Financial Service* (Ch. Div. 1983), 190 N.J. Super. 615, 464 A.2d 1203, the "illegality" defense was held to bar the claim of a holder in due course of a secondary mortgage and note because New Jersey's Secondary Mortgage and Loan Act specifically made void "[a]ny obligation on the part of the borrower arising out of a secondary mortgage loan." (*Westervelt*, 190 N.J. Super. at 620, 464 A.2d at 1205.) *Westervelt* involved what *Berenyi* did not: applicability of a direct statutory expression that an instrument, itself, arising from a particular contract or transaction was void. *Westervelt*, 190 N.J. Super. at 623, 464 A.2d at 1207.

Several other jurisdictions also find reason to draw a distinction between the voidness of a negotiable instrument and the underlying contract or transaction upon which it is exchanged. (See Annot., 80 A.L.R.2d 465, 472-76 (1961) (summarizing several State decisions in which holders in due course were permitted to claim payment of instruments executed in favor of foreign corporations doing business in States without complying with local licensing requirements).) Although recognition of that distinction is not universal (see *Columbus Checkcashiers v. Stiles* (1990), 56 Ohio App. 3d 159, 565 N.E.2d 883; *Wilson v. Steele* (1989), 211 Cal. App. 3d 1053, 259 Cal. Rptr. 851 (holding that "illegality" need only be present in the underlying contract between an unlicensed contractor and the drafter of a negotiable instrument to bar the claim of a holder in due course)), we are convinced it remains the better rule.

A plaintiff is precluded from recovering on a suit involving an illegal contract because the plaintiff is a wrongdoer. (See *Bankers Trust Co. v. Litton Systems, Inc.* (2d Cir. 1979), 599 F.2d 488, 492 (citing the Re-

statement of Contracts and Restatement (Second) of Contracts).) Enforcement of the illegal contract makes the court an indirect participant in the wrongful conduct. See *Litton*, 599 F.2d at 493.

But a holder in due course is an innocent third party. (*Litton*, 599 F.2d at 492-93.) Such a holder is without knowledge of the circumstances of the contract upon which the instrument was initially exchanged. (Ill. Rev. Stat. 1989, ch. 26, par. 3—302(1)(c) (defining a holder in due course, in part, as a holder who is "without notice *** of any defense against or claim to [the instrument] on the part of any person").) The same rationale that precludes recovery by a wrongdoing plaintiff is inapplicable in determining such a holder's right to claim payment. (*Litton*, 599 F.2d at 492-93.) Enforcement of that claim does not sully the court. *Litton*, 599 F.2d at 492-93.

The holder in due course concept is intended to facilitate commercial transactions by eliminating the need for "elaborate investigation" of the nature of the circumstances for which an instrument is initially exchanged or of its drafting. (*Litton*, 599 F.2d at 494.) If "illegality" means simply negation of the initial obligation to pay, a holder in due course enjoys no more protection than a party to the original contract or transaction. The "real" defense of "illegality" is reduced to a "personal" one. See *Vedder v. Spellman* (1971), 78 Wash. 2d 834, 839-40, 480 P.2d 207, 210 (Neill, J., concurring).

It is, therefore, not enough simply to conclude that the initial obligation to pay arising from a void contract or transaction is void. Negation of that obligation as between the contracting parties has little bearing on whether a holder in due course of an instrument arising from the contract or transaction should nevertheless be permitted to make a claim for payment.

The "local law" (Ill. Ann. Stat., ch. 26, par. 3—305, Uniform Commercial Code Comment, at 66 (Smith-Hurd Supp. 1992)) of this State has been formulated upon this court's recognition, in cases predating the UCC, of legislative prerogative regarding negotiable instruments. In adopting the UCC and, in particular, section 3—305, our legislature chose to confer upon a holder in due course of a negotiable instrument considerable protection against claims by persons to it. Our legislature also continues to declare certain obligations void because of the circumstances of the agreements from which they arise and without regard to the status of who may claim ownership. (Ill. Rev. Stat. 1989, ch. 38, par. 28—7(b) (subjecting "[a]ny obligation" made void by reason of gambling to be "set aside and vacated" by any court).) The selective negation of obligations reflects a legislative aim to declare what will and will not give rise to "illegality" in cases now governed by the UCC. As legislative direction indicates which obligations are always void, legislative silence indicates when the protection afforded a holder in due course must be honored.

We therefore reaffirm, today, the view this court has consistently recognized in cases predating the UCC. Unless the instrument arising from a contract or transaction is, itself, made void by statute, the "illegality" defense under section 3—305 is not available to bar the claim of a holder in due course.

## Conclusion

To determine whether Hodge is entitled to a judgment of dismissal, we need not engage in an analysis aimed at characterizing the contract between Fentress and the Hodges. Whether the underlying contract should be considered void because Fentress was not licensed as required by the Illinois Plumbing License Law is not dis-

positive of the Currency Exchange's right, as a holder in due course, to claim payment of the check. It is relevant only to determine whether the Illinois Plumbing License Law provides that any obligation arising from a contract for plumbing services made in violation of its requirements is void. It does not.

For the reasons stated, the judgments of the appellate and circuit courts are reversed, and the cause is remanded to the circuit court for further proceeding.

*Judgments reversed;*
*cause remanded.*

JUSTICE McMORROW took no part in the consideration or decision of this case.

JUSTICE BILANDIC, dissenting:

I

Because the Currency Exchange's complaint fails to adequately allege a cause of action against Hodge, I would affirm the circuit court's dismissal of the Currency Exchange's action against Hodge. (See *Falk v. Martel* (1991), 210 Ill. App. 3d 557, 562 ("It is well established that dismissal of a complaint may be upheld upon any basis found in the record, including a failure to state a cause of action"); *Munizza v. City of Chicago* (1991), 222 Ill. App. 3d 50, 55; *Midwest Bank & Trust Co. v. Village of Lakewood* (1983), 113 Ill. App. 3d 962, 974; *Bauscher v. City of Freeport* (1968), 103 Ill. App. 2d 372, 375.) Accordingly, I respectfully dissent.

In its complaint, the Currency Exchange alleged, in pertinent part, as follows:

"1. That on or about March 8, 1990, for value received, the Defendant, Beulah M. Hodge, made and delivered to the Defendant, Fred Fentress, her certain check, a copy of which is hereto attached marked Exhibit 'A' and made a part hereof.

2. That thereafter, the Defendant, Fred Fentress, endorsed said check to the Plaintiff for value and who [*sic*] became a holder in due course under the Uniform Commercial Code.

\* \* \*

3. That Plaintiff holds and owns said check and there is due and owing to the Plaintiff from the Defendants and each of them the sum of $500.00."

On appeal to this court, the Currency Exchange contends that its status as a holder in due course entitles it to payment from Hodge no matter what Hodge's legal rights were with respect to Fentress. According to the Currency Exchange, it is entitled to recovery from Hodge even if Hodge could rightfully have refused to pay Fentress.

In *Knox College v. Celotex Corp.* (1981), 88 Ill. 2d 407, this court discussed pleading requirements in Illinois. The court stated:

"Notice pleading, as known in some jurisdictions, is not sufficient under our practice act. \* \* \*

'This court has repeatedly held that a complaint which does not allege *facts*, the existence of which are necessary to enable a plaintiff to recover does not state a cause of action and that *such deficiency may not be cured by liberal construction* or argument.' (Emphasis added.)" *Knox College*, 88 Ill. 2d at 426-27, quoting *People ex rel. Kucharski v. Loop Mortgage Co.* (1969), 43 Ill. 2d 150, 152.

See also *Beckman v. Freeman United Coal Mining Co.* (1988), 123 Ill. 2d 281, 287.

The UCC defines a holder in due course of a negotiable instrument as follows:

"(1) A holder in due course is a holder who takes the instrument

(a) for value; and

(b) in good faith; and

(c) without notice that it is overdue or has been dishonored or of any defense against or claim to it on

the part of any person." Ill. Rev. Stat. 1989, ch. 26, par. 3—302.

Here, the Currency Exchange's status as a holder in due course is an essential element of the Currency Exchange's action. The complaint alleges that "the Defendant *** endorsed said check to the Plaintiff for value" and that the plaintiff thereby "became a holder in due course under the UCC." The Currency Exchange's complaint, however, does not contain sufficient allegations of fact to support its claim that it is a holder in due course. The complaint fails to allege any relevant facts to establish the claim that the Currency Exchange took the check "for value," "in good faith" and "without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person." (Ill. Rev. Stat. 1989, ch. 26, pars. 3—302(1)(a), (1)(b), (1)(c).) Accordingly, the complaint fails to adequately state a cause of action against Hodge.

The record in this case suggests that the Currency Exchange is not a holder in due course. Initially, I note that the check in this case was an uncertified personal check. It was not a payroll check or a government check. It can hardly be doubted that any currency exchange would question whether it would be able to collect on an uncertified personal check. Further, the check in this case was made payable to "Fred Fentress—A-OK Plumbing." It was endorsed "Fred Fentress A-OK Plumbing," underneath which was the notation "Sole Owner." Any currency exchange presented with such a check would have to question whether the named individual was indeed the sole owner of the named business and entitled to the proceeds of the check. (See, *e.g., Owens v. Nagel* (1929), 334 Ill. 96 (where payee of note was an individual whose name on note was followed by the word "trustee," alleged holder in due course who purchased note from payee in settlement of personal debt of the

payee was, by the terms of the note, put on inquiry regarding the trusteeship and could not be considered a holder in due course).) One must wonder whether the Currency Exchange in this case asked for and received documentation establishing that there was such a business as "A-OK Plumbing" and that Fred Fentress was the "sole owner," entitled to the proceeds of a check made payable to "Fred Fentress—A-OK Plumbing." Also, this *personal check* was made payable to the *order* of a *business*. It is reasonable to assume that a *business person* would have a *business bank account* where the check could be negotiated without a fee. Why would such a person choose to pay a fee to a currency exchange? Failure to plead facts leaves questions of good faith and defenses unanswered. I make these observations for the purpose of pointing out that, in my view, the record here casts doubt upon whether the Currency Exchange can, in good faith, plead facts sufficient to support the conclusion that it is a holder in due course.

The majority here states that "[t]he legal sufficiency of the Currency Exchange's action, including the allegation that it possesses the check as a holder in due course, is admitted by Hodge's motion [to dismiss]." (156 Ill. 2d at 117.) I do not disagree with the fundamental notion that "[a] motion to dismiss admits all facts well pleaded together with all reasonable inferences which could be drawn from those facts." (*Horwath v. Parker* (1979), 72 Ill. App. 3d 128, 134; *Debolt v. Mutual of Omaha* (1978), 56 Ill. App. 3d 111, 113.) However, it is also well established that a motion to dismiss "does *not* admit conclusions of law or conclusions of fact unsupported by allegations of specific facts upon which such conclusions rest." (Emphasis added.) (*Horwath,* 72 Ill. App. 3d at 134; *Debolt,* 56 Ill. App. 3d at 113.) In this case, the Currency Exchange's complaint did not allege facts in support of the conclusion that it was a holder in

due course. Accordingly, that conclusion was not admitted by Hodge's motion to dismiss.

## II

Even if the conclusion that the Currency Exchange is a holder in due course were deemed admitted by Hodge's motion to dismiss, I would affirm the trial court's dismissal of the Currency Exchange's complaint. The majority here incorporates into section 3—305 of the UCC an additional requirement that must be met before the defense of illegality can be raised to defeat the claim of an alleged holder in due course. That additional requirement is not found anywhere in the plain language of section 3—305, however. Section 3—305 provides, in pertinent part:

> "[A] holder in due course *** takes the instrument free from
> ***
>
> (2) all defenses of any party to the instrument with whom the holder has not dealt except
> ***
>
> (b) *** incapacity, or duress, or illegality of the transaction, as renders the *obligation* of the party a nullity." (Emphasis added.) (Ill. Rev. Stat. 1989, ch. 26, par. 3—305.)

With respect to the defenses of duress and illegality, the comments to section 3—305 of the UCC state, in pertinent part, that "[t]hey are primarily a matter of local concern and local policy. All such matters are therefore left to the local law. If under that law the effect of the duress or the illegality is to make the *obligation* entirely null and void, the defense may be asserted against a holder in due course." (Emphasis added.) Ill. Ann. Stat., ch. 26, par. 3—305, Uniform Commercial Code Comment, at 66 (Smith-Hurd Supp. 1992).

The plain language of section 3—305 and the comments to section 3—305 make it clear that where the illegality of a transaction renders the *obligation* of the maker of an instrument a nullity, the illegality of the transaction can be raised as a defense by the maker of the instrument, even against a holder in due course. Section 3—305 does not state that illegality is a defense only where the *instrument* arising from a contract or transaction has been expressly declared void by the legislature due to the illegality of the transaction. Had the legislature intended for illegality to be a defense only where it had expressly declared an instrument void due to the illegality of the underlying transaction, it could easily have said so in section 3—305. It did not say so, however.

The only inquiry necessary to resolve the issue presented in this case, then, is whether the contract between Hodge and Fentress is void on the grounds of illegality. The comments to the UCC instruct that one must look to Illinois statutory and case law to determine whether the underlying contract was illegal and, as a result of that illegality, void. (Ill. Ann. Stat., ch. 26, par. 3—305, Uniform Commercial Code Comment, at 66 (Smith-Hurd Supp. 1992).) An examination of the statute providing for the licensing of plumbers, the public policy behind that statute, and Illinois case law concerning the illegality of contracts made in contravention of professional licensing laws establishes that the contract between Hodge and Fentress is illegal and void.

The Illinois Plumbing License Law (Ill. Rev. Stat. 1989, ch. 111, par. 1101 *et seq.*) specifically prohibits the performance of plumbing work by nonlicensed plumbers. Pursuant to the Act, "all plumbing shall be performed only by plumbers licensed under the provisions of this Act." (Ill. Rev. Stat. 1989, ch. 111, par. 1103(1).) The Act imposes criminal penalties on anyone performing

plumbing services without a license. (Ill. Rev. Stat. 1989, ch. 111, par. 1128.) The rationale behind the prohibition of plumbing work by nonlicensed plumbers is set forth in the Plumbing License Law. The portion of the Law setting forth its purpose and underlying policy states:

> "It has been established by scientific evidence that improper plumbing can adversely affect the health of the public. *** Faulty plumbing is potentially lethal and can cause wide spread disease and an epidemic of disastrous consequences.
>
> To protect the health of the public it is essential that plumbing be installed by persons who have proven their knowledge of the sciences of pneumatics and hydraulics and their skill in installing plumbing.
>
> Consistent with its duty to safeguard the health of the people of this State, the General Assembly therefore declares that individuals who plan, inspect, install, alter, extend, repair and maintain plumbing systems shall be individuals of proven skill. *** [T]his Act is therefore declared to be essential to the public interest." Ill. Rev. Stat. 1989, ch. 111, par. 1101.

Here, the contract between Hodge and Fentress presents the kinds of dangers the Illinois Plumbing License Law was intended to guard against. Affidavits attached to Hodge's section 2—619 motion to dismiss, which were not contradicted by the plaintiff, establish that Fentress was not a licensed plumber. The affidavits also establish that Hodge and her husband, Eric, believed that Fentress was a licensed plumber at the time they contracted with him for plumbing services. Had Fentress performed the work required of him pursuant to the contract with Hodge, it is likely that his work would not have conformed to acceptable plumbing standards and would have posed the kinds of dangers which the Plumbing License Law was intended to prevent.

Illinois courts have recognized that "generally a statute which declares an act illegal and which imposes a

penalty for its violation renders the contract for the performance of the act void and unenforceable." (*T.E.C. & Associates, Inc. v. Alberto-Culver Co.* (1985), 131 Ill. App. 3d 1085, 1096 (declaring a fully performed contract made in violation of an employment agency licensing act illegal and void).) More specific to this case, the court in *Wright v. Baird* (1928), 249 Ill. App. 90, 92-94, held that a contract made for the services of an unlicensed plumber was illegal and void under the then-existing version of the Plumbing License Law even where the services had already been performed. The court rejected the unlicensed plumbers' contention that "the act is a measure merely to procure revenue and in no manner affects the validity of the contract expressed or implied." (*Wright*, 249 Ill. App. at 92.) The court stated, "It seems plain from the reading of the statute that the measure is broader than a mere act to procure revenue, and that its purport is to conserve the health of the citizens of the State, passed under the police power of the State." (*Wright*, 249 Ill. App. at 94.) The court in *Wright* also specifically rejected the plumbers' argument that the licensing statute must expressly declare that a contract made in violation of the statute is void in order for a court to find the contract void. *Wright*, 249 Ill. App. at 95.

Like the contract in *Wright*, the contract made between Hodge and Fentress in this case must be considered illegal and void. Performance of plumbing services under the contract expressly contravenes the current Plumbing License Law. The Law provides for criminal sanctions against unlicensed plumbers. The Law further contains a strong public policy statement concerning the relationship between licensing plumbers and the need to protect the public health. Clearly, the contract for the services of an unlicensed plumber in the instant case is the type of contract which Illinois courts have consist-

ently declared illegal and void. (See, *e.g.*, *T.E.C. & Associates, Inc.*, 131 Ill. App. 3d at 1096; *Keenan v. Tuma* (1926), 240 Ill. App. 448, 455-57 (an unlicensed architect could not recover for his services because the contract was made in violation of the applicable professional licensing act; the court stated that "the alleged contract of employment became a *nullity*" (emphasis added)); *Tovar v. Paxton Community Memorial Hospital* (1975), 29 Ill. App. 3d 218, 220 (an unlicensed physician could not recover for breach of his employment contract as the contract was in violation of public policy and void); *Leoris v. Dicks* (1986), 150 Ill. App. 3d 350, 354 (court refused to enforce a contract for attorney compensation which violated a rule against attorney fee-splitting).) Because the contract between Hodge and Fentress is void, the section 3—305 defense of illegality is available to Hodge.

Courts in other States have ruled that the defense of illegality of the contract may be asserted against a holder in due course without requiring that the negotiable instrument in question be expressly declared void by statute. In *Wilson v. Steele* (1989), 211 Cal. App. 3d 1053, 259 Cal. Rptr. 851, the court held that a contract made by an unlicensed home contractor was void and illegal and that this defense could be asserted against a holder in due course. The court noted that the contractor, being unlicensed, had violated the applicable licensing statute. Applying California's version of section 3—305, the court then determined that this defense could be asserted against a holder in due course. In *Columbus Checkcashiers, Inc. v. Stiles* (1990), 56 Ohio App. 3d 159, 565 N.E.2d 883, the court likewise held that a check given as consideration for a contract between a homeowner and an unlicensed home contractor was illegal and void and that the defense of illegality could be asserted against the holder in due course. Like the court in *Wil-*

*son,* the *Columbus Checkcashiers* court relied on the applicable contractor licensing statute forbidding any unlicensed person to perform the work of a licensed contractor. In *Columbus Checkcashiers,* as in the instant case, the homeowner stopped payment on the check, and the alleged holder in due course sued to recover the amount of the check. The Ohio court found in favor of the homeowner on the grounds that the contract was illegal and void under the Ohio version of section 3—305. See also *Middle Georgia Livestock Sales v. Commercial Bank & Trust Co.* (1971), 123 Ga. App. 733, 735-36, 182 S.E.2d 533, 535 (pursuant to Georgia's version of section 3—305, a note given for the purchase of stolen cattle was unenforceable "even in the hands of a holder in due course" because the underlying contract was illegal and "void ab initio").

In *Columbus Checkcashiers* and *Wilson,* as in the instant case, the subject matter of the contract, performance by an unlicensed individual, was prohibited by law. Accordingly the courts held that the contract was illegal and void. Moreover, the courts held that this defense could be asserted against a holder in due course. Most importantly, the courts in *Columbus Checkcashiers* and *Wilson* did not require that a statute expressly declare the note in question void in order for the defense of illegality to be available. Such a requirement is likewise not a part of Illinois' version of section 3—305. In contrast, under New Jersey law, which the majority here purports to follow, the comments to that State's version of section 3—305 expressly state that, "[i]n New Jersey, a holder in due course takes free and clear of the defense of illegality, *unless the statute which declares the act illegal also indicates that payment thereunder is void.*" (Emphasis added.) (N.J. Stat. Ann. §12A:3—305(2)(b), New Jersey Study Comments (West 1962), as quoted in *New Jersey Mortgage & Investment Corp. v. Berenyi*

(1976), 140 N.J. Super. 406, 409, 356 A.2d 421, 423.) Notably, Illinois did not include a similar directive in its comments to section 3—305.

The majority asserts that to bar recovery by the Currency Exchange in this case would be unfair because the Currency Exchange is an innocent third party which had no knowledge of the circumstances of the contract between Hodge and Fentress. However, section 3—305 clearly provides that the general policy favoring free negotiability is not absolute. There is a competing policy disfavoring certain transactions, such as those involving infancy, duress, illegality or misrepresentation as to the true nature of an instrument (*i.e.*, fraud in the factum). (Ill. Rev. Stat. 1989, ch. 26, par. 3—305.) Pursuant to section 3—305, the Currency Exchange takes a check subject to these and certain other real defenses. The Illinois legislature has provided that, by definition, a holder in due course is one who does not have notice of *any* of the real defenses listed in section 3—305. (See Ill. Rev. Stat. 1989, ch. 26, par. 3—302(1)(c).) By statute, the innocence of the holder in due course cannot defeat *any* of the real defenses listed in section 3—305, including illegality. Accordingly, the argument that the Currency Exchange could not have known that the underlying transaction was illegal is simply misplaced. Such reasoning would lead to the conclusion that all of the defenses listed in section 3—305 should be unavailable to defeat the claim of a holder in due course, a conclusion obviously contrary to the provisions of section 3—305.

For the above reasons, I dissent. I would affirm the judgment of the appellate court which affirmed the circuit court's dismissal of the Currency Exchange's action against Hodge.